WHITNEY ᴇᴛ ᴀʟ., EXECUTORS, ᴇᴛ ᴀʟ. *v.* STATE
TAX COMMISSION OF NEW YORK.

No. 541.   Argued February 28, 29, 1940.—Decided March 25, 1940.

*Mr. Arthur A. Ballantine,* with whom *Messrs. Roy C.
Gasser, Thomas B. Gilchrist, Horace R. Lamb,* and *Leo
Gottlieb* were on the brief, for appellants.

532

534

*Mr. Mortimer M. Kassell,* with whom *Mr. Harry T. O'Brien, Jr.* was on the brief, for appellee.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Cornelius Vanderbilt died in 1899. By his will he established a trust to issue a designated annual income to his wife. Upon her death, Mrs. Vanderbilt was also

given the power to dispose of this fund among four of their children, in such proportions as she might choose. In default of her exercise of this discretionary power, the fund was to go to the children equally. Mrs. Vanderbilt died in 1934, and by her will availed herself of the power. The taxing authorities of New York included the value of this trust fund in her gross estate, and on this basis computed Mrs. Vanderbilt's estate tax. The Court of Appeals of New York, finding that the applicable New York legislation had been properly construed by the Tax Commission, sustained its validity. 281 N. Y. 297; 22 N. E. 2d 379. The result of this decision is to reduce the amount available for distribution among the beneficiaries of Mrs. Vanderbilt's independent property below what it would have been had the tax been assessed on the basis of that property without the inclusion of the trust fund which came from her husband. These beneficiaries, and the executors of the will, claim that the exaction thus sanctioned by New York violates the Fourteenth Amendment of the United States Constitution.

The contested statute, New York Laws of 1932, ch. 320, derives meaning as an incident in the history of New York's present system of death taxes. That system had its beginning in 1885. The original act taxed individual economic benefits derived upon death rather than the total amount of the estate. Laws of 1885, ch. 483. Under this legislation, the transmission of property subject to powers of appointment, either general or special, was attributed to the estate of the donor. *Matter of Stewart,* 131 N. Y. 274; 30 N. E. 184; and the subsequent exercise of the power was not taxed. *Matter of Harbeck,* 161 N. Y. 211; 55 N. E. 850. The administrative awkwardness incident to this treatment of appointive property led to an amendment whereby all property passing under powers of appointment was attributed to the do-

nee, not to the donor. Laws of 1897, ch. 284. This was the New York law when Cornelius Vanderbilt died. In 1930, experience with the legacy tax in New York and elsewhere led to a shift in the basis for imposing death duties. Acting upon the results of an inquiry into the defects and inadequacies of a taxing system born of other times and calculated to meet different needs, New York in 1930 supplanted her system which taxed the individual legatee's privilege of succession by one which measured the levy by the size of the total estate. Laws of 1930, ch. 710. Under this legislation, property subject to a power of appointment—whether general or special— is included in the donor's gross estate. If the power is general, its later exercise sweeps the appointive property into the donee's gross estate also.

As is apt to happen in extensive legislative readjustments dealing with complex problems, the effect of the change in 1930 upon some of the more specialized situations coming within the general policy was overlooked. Powers created between 1885 and 1897 had been taxable at the donor's death. Special powers created after 1897 and exercised before 1930 had been taxed at the donee's death. Powers created and exercised after 1930 were included in the donor's estate. But powers created after 1897 and not exercised before 1930 were outside the legislative framework. Thus an unintended immunity from the incidence of taxation had been given to special powers of appointment created after 1897 but not exercised before the passage of the 1930 legislation. When experience disclosed this omission, the Legislature removed it in 1932. The amendment of that year, which is copied in the margin,* included in the donee's gross

---

*The amendment provided that there should be included in the decedent's gross estate interests of which the following was part of the enumeration of defined categories:

"7–a. To the extent of any property passing under a power of appointment exercised by the decedent (a) by will, or (b) by deed exe-

estate appointive property which was not taxable at the donor's death but would have been taxable under the superseded statutory provision of 1897. It is under this amendment that New York has imposed the tax here assailed. This brings us to a consideration of appellants' claims.

As against this attempt by the State to devise a harmonious taxing system, appellants urge that New York exacts an unjustifiably heavier estate tax from the beneficiaries of Mrs. Vanderbilt's unrestricted property because in the accounting of her estate property was included of which she was not the "beneficial owner." Attacking the 1932 Act from another point of view, they claim that New York had no authority to draw a taxing

cuted in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth . . . provided that the transfer of such property is not or was not subject to a death tax in the estate of the grantor of such power but would have been so taxable except for a statute providing that the tax on the transfer of such property should be imposed in the estate of the grantee of such power in the event of the exercise thereof."

The legislative history of this measure was thus summarized in the opinion of Surrogate Foley: "An explanatory memorandum' of the State Tax Commission prepared at the time of the drafting and introduction of the legislative bill has been submitted to the surrogate by consent of the parties. It is illuminative of the reasons which led to the enactment of new subdivision 7–a. The State Tax Commission pointed out that the existing law in 1932, prior to the enactment of the subdivision, permitted the fund to escape taxation in both the estate of the grantor and the estate of the grantee of the power. It was stated in reference to the measure: 'This bill provides that property transferred by the exercise of a special or limited power of appointment shall be included in the decedent's gross estate for the purpose of the present estate tax in the event it is not taxable or has not been taxed in the estate of the grantor of the power and thus insures that one death tax will be imposed upon such property.'" *Matter of Vanderbilt,* 163 Misc. (N. Y.) 667, 676; 297 N. Y. S, 554, 565.

line between special powers created prior to 1930 and those established thereafter.

Large concepts like "property" and "ownership" call for close analysis, especially when tax legislation is under scrutiny. Mrs. Vanderbilt, to be sure, had, in the conventional use of that term, no "beneficial interest" in the property which she transferred through the exercise of her power of appointment. She could not, that is to say, use the corpus of the trust herself or appoint it to her estate; nor could she have applied it to her creditors. These qualifications upon Mrs. Vanderbilt's power over the appointive property had a significance during her lifetime which death transmuted. For when the end comes, the power that property gives, no matter how absolutely it may have been held, also comes to an end—except in so far as the power to determine its succession and enjoyment may be projected beyond the grave. But the exercise of this power is precisely the privilege which the state confers and upon which it seizes for the imposition of a tax. It is not the decedent's enjoyment of the property—the "beneficial interest"—which is the occasion for the tax, nor even the acquisition of such enjoyment by the individual beneficiaries. Presumably the policy behind estate tax legislation like that of New York is the diversion to the purposes of the community of a portion of the total current of wealth released by death.

In making this diversion, the state is not confined to that kind of wealth which was, in colloquial language, "owned" by a decedent before death, nor even to that over which he had an unrestricted power of testamentary disposition. It is enough that one person acquires economic interests in property through the death of another person, even though such acquisition is in part the automatic consequence of death or related to the decedent merely because of his power to designate to whom and in

what proportions among a restricted class the benefits shall fall.

The books are replete with recognition of these general principles. Thus the full value of property may be taxed as part of a decedent's gross estate even though held by him merely as a tenant by the entirety, *Tyler* v. *United States,* 281 U. S. 497; likewise the full value of property in which the decedent was only a joint tenant may be taxed to his estate, *United States* v. *Jacobs,* 306 U. S. 363. In neither of these instances was there an exact equation between the "beneficial interest" owned by the decedent just before his death and that by which the tax was measured. Again, this Court found no difficulty in sustaining a tax on the transfer of property conveyed in trust by a decedent during his life, although he had divested himself of all beneficial interest in the corpus and had only reserved the power to change beneficiaries, excluding, however, himself and his estate from the range of choice. *Porter* v. *Commissioner,* 288 U. S. 436. The attempt to differentiate the tie that binds these cases by treating the *inter vivos* transfers in these decisions as mere substitutions for testamentary dispositions, disregards the emphasis in these cases on the practical effect of death in bringing about a shift in economic interest, and the power of the legislature to fasten on that shift as the occasion for a tax. This broader base is emphasized, for instance, by the fact that in the *Porter* case the decedent had divested himself of all "beneficial interest" in the trust property prior to the passage of the taxing act by which the trust was included in the value of his gross estate.

A person may by his death bring into being greater interests in property than he himself has ever enjoyed, and the state may turn advantages thus realized into a source of revenue, as illustrated by earlier cases dealing

with special powers of appointment that also came here from New York. *Orr* v. *Gilman,* 183 U. S. 278; *Chanler* v. *Kelsey,* 205 U. S. 466. In these cases, to be sure, a legacy tax was assailed—a tax, that is, measured by the specific interests which the beneficiaries of the power received. Here, the grievance is asserted more particularly by those succeeding to Mrs. Vanderbilt's free property. But if death may be made the occasion for taxing property in which the decedent had no "beneficial interest," then the measurement of that tax by the decedent's total wealth-disposing power is merely an exercise of legislative discretion in determining what the state shall take in return for allowing the transfer. The adoption of this measure may, of course, in the case of a graduated tax, burden individual beneficiaries beyond what they would bear if the same tax rate were applied to the value of the unrestricted property of the decedent and the property over which he had but a restricted control were excluded. There is nothing in the Fourteenth Amendment to prevent legislatures from devising death duties having this effect, nor to authorize courts to deny them the right to do so.

The circumstances of the present case illustrate the practical considerations which may induce a legislature to treat restricted and unrestricted property as a taxing unit. The potential interests of the beneficiaries of Mrs. Vanderbilt's free property are intertwined with their interests in the appointive property. The dispositions which she was free to make under her power of appointment served to enhance her freedom with respect to her own property. How Mrs. Vanderbilt would have distributed her individual property if she had possessed no control over that left by her husband is speculative. But it is certainly within the area of legislative judgment to assume that special powers of appointment are ordinarily designed for ends similar to those in the present case—

namely, to enlarge the donee's range of bounty, however narrowly restricted the enlargement may be, to a circle of beneficiaries closely related to, if not identical with, those whom the donee would be naturally disposed to favor. To the extent that this is true, there is compensation for those who may succeed to the donee's individual property, and who must pay a larger tax, because the appointive property is included in the gross estate. The legislature can hardly particularize the instances and draw up a tariff of compensations, and it is certainly not the province of courts to make the attempt. It suffices that the legislature has seen fit to frame a general enactment drawn on lines not offensive to experience and aimed at curing a revealed inequality in the state's taxing system.

Appellants vainly seek to draw strength from *Schlesinger* v. *Wisconsin,* 270 U. S. 230; *Hoeper* v. *Tax Commission,* 284 U. S. 206; and *Heiner* v. *Donnan,* 285 U. S. 312. The differences of opinion to which these cases gave rise are not here relevant.

But there remains the claim of appellants that in drawing the line between special powers created before 1930 and those having a later origin, New York ran afoul of the Equal Protection Clause. The brief summary we have given of the history of this legislation seems a sufficient answer to the charge of proscribed discrimination. To have continued the complete immunity from taxation which the 1930 legislation had unintentionally conferred upon special powers of appointment created before its passage was deemed by New York to have resulted in substantial inequality. The correction of such inequality is not a denial of the equality commanded by the Fourteenth Amendment. In the age-old but increasingly difficult task of tapping new sources of revenue, nothing may more legitimately attract the attention of financial statesmen than opportunities to reach property which has

542

enjoyed immunity from tax burdens borne by others similarly situated. *Watson* v. *State Comptroller,* 254 U. S. 122; *Welch* v. *Henry,* 305 U. S. 134.

Acceptance of *Binney* v. *Long,* 299 U. S. 280, would not constrain us to hold differently. In the circumstances confronting the New York Legislature, as the Court of Appeals pointed out, the discrimination affecting special powers was not based upon what was deemed in the *Binney* case to be a date "arbitrarily selected but is a logical solution by the Legislature of a problem which it was required to meet." 281 N. Y. at 317. All special powers, whether created before or after 1930, are taxed in New York. In one case, they are taxed to the donor's estate; in the other—since the same treatment would be manifestly impracticable—to the donee's. Differences in circumstances beget appropriate differences in law. The Equal Protection Clause was not designed to compel uniformity in the face of difference. *Madden* v. *Kentucky, ante,* p. 83.

The judgment below is

*Affirmed.*

MR. JUSTICE ROBERTS is of opinion that the instant case is indistinguishable in principle from *Binney* v. *Long,* 299 U. S. 280, and that, accordingly, the judgment should be reversed.

MR. JUSTICE McREYNOLDS did not participate in the decision of this case.