In the Matter of the Estate of HENRY H. ROGERS, Deceased.
STATE TAX COMMISSION, Appellant; ALBERT STICKNEY et al., as
Surviving Executors of HENRY H. ROGERS, Deceased, et al.,
Respondents.

Second Department, July 2, 1945.

*Mortimer M. Kassell, Paul Newman* and *Francis Kelliher* for appellant.

*Hersey Egginton, Harold A. Donegan* and *Arthur W. Siegrist* for Albert Stickney and Central Hanover Bank & Trust Company, as surviving executors, etc., of Henry H. Rogers, deceased, respondents.

*Robert Gerstenlauer* and *Walter D. Fletcher* for City Bank Farmers Trust Company and William R. Coe, as surviving trustees etc., of Henry H. Rogers, Sr., respondents.

*Paul Van Anda* and *Kenneth M. Spence* for Pauline V. Hoving, respondent.

*H. Clinton Corwin* and *M. C. Eckes* for Millicent A. Rogers, respondent.

*John F. Keating* for Guaranty Trust Company of New York and Millicent A. Rogers, as general guardians of the property of Peter Salm, respondents.

JOHNSTON, J. This appeal involves the construction of section 249-r, subdivision 7, of the New York Tax Law, which section, so far as material, provides:

" § 249-r. *Gross estate.* The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, * * *.

" 7. To the extent of any property passing under a general power of appointment exercised by the decedent (a) by will, * * * "

In 1935, the Federal Estate Tax Act (U. S. Code, tit. 26, § 811, subd. [f]) was identical with the State statute. To date the State statute has remained unchanged. In 1942, the Federal statute was amended, but we are not presently concerned with the amendment.

The precise question to be decided is whether, under the State statute, a decedent's gross estate must be deemed to include property held by him under a general power of appointment which he bequeaths or appoints to a person who accepts it, but who, in default of such bequest or appointment, would have received more under the will of the donor of the power.

The facts are as follows: Henry H. Rogers, Sr., died on May 19, 1909, a resident of New York County. By article " Eighth "

of his will, probated on May 28, 1909, he created a trust for the benefit of his son, Henry H. Rogers, Jr. (hereinafter referred to as Colonel Rogers). The will also directed that one half of the principal of the trust be paid to Colonel Rogers outright upon his attaining the age of forty years (which occurred on December 28, 1918); and that upon his death the remaining one half be paid " * * * to such persons or corporations and in such manner, as the said child shall direct by his Last Will and Testament, or, in the absence of such direction, to such persons as shall then constitute the heirs at law of the said child, as in the case of the inheritance of real property, according to the laws of the State of New York."

Colonel Rogers died on July 25, 1935, a resident of Suffolk County. His heirs at law were his widow, Pauline, his daughter, Millicent, and his son, Henry 3d. By article " Twelfth " of his will, probated on October 28, 1935, he exercised the power of appointment by dividing the appointed property into three equal parts and setting up three separate trusts: one for his wife, one for his daughter, and one for his grandson, Peter Salm. He also, by his will, expressly excluded Henry 3d, his son by a former marriage, from participation in any of the three trusts established out of the appointed property.

Under the trust for the wife, she receives the income for life unless she remarries, in which event she is to receive the income from only one half the corpus, and the trust is to terminate as to the other half. Upon the partial termination of the trust by the wife's remarriage, or upon its complete termination by her death, the corpus is given to the surviving issue of Colonel Rogers and his wife. The wife remarried on April 30, 1937, and is now Pauline V. Hoving. Since the only surviving issue was the daughter Millicent, she became entitled to one half the corpus of the trust set up for the wife.

Under the trust set up for the daughter Millicent, she receives the income for life, with remainder to her surviving issue other than her son Peter.

Under the trust for the grandson Peter Salm, he receives the income for life, with the remainder to his surviving issue.

Colonel Rogers, by article " Sixteenth " of his will, further provided that in the event any portion of the trusts created by him be adjudged invalid, the principal of such invalid portion shall go to the life beneficiary.

In 1938, the Surrogate of New York County, in a proceeding in the father's estate, held that Colonel Rogers had " validly exercised " his power of appointment and had properly

appointed the entire corpus of the original trust fund. (*Matter of Rogers*, 170 Misc. 85; see, also, *Matter of Rogers*, N. Y. L. J., Nov. 9, 1938, p. 1542, col. 2.) On January 12, 1939, based in part upon a compromise agreement of all the parties, the Surrogate made a decree directing an appropriate division among them of such corpus and accrued income. While as to a small fraction (6.667%) of the principal, and as to the share of the grandson Peter, the trusts created by article "Twelfth" were deemed to be partially invalid because they violated the statute against perpetuities, nevertheless, to the extent of such invalidity the Surrogate held that an effective outright disposition of the principal had been made by the alternative provisions of article "Sixteenth" of Colonel Rogers' will. Hence, as to the entire corpus of the original trust, Colonel Rogers by his will had effectively exercised his power of appointment; and by the Surrogate's decree the parties had elected to accept the appointments thus made.

The effect of Colonel Rogers' exercise of the power, as determined by the events following his death, was that his grandson Peter received $2,832,158.76 outright, representing one third of the value of the original trust, and his widow received *less* and his daughter *more* than they would have received if he had failed to exercise the power and they, as his heirs at law, had taken under his father's will. In other words, by the exercise of the power, the widow received (a) $188,824.93 outright, plus (b) a life estate valued at $1,492,806.88; and the daughter received (a) $188,824.93 outright, plus (b) a life estate valued at $1,746,676.88, plus (c) $1,326,666.97 upon the widow's remarriage. In addition, upon the widow's death the daughter, if she survives her mother, will receive $1,326,666.97. If the power had not been exercised, the widow and the daughter each would have received $2,832,158.76 outright, representing one third of the value of the original trust.

By a *pro forma* taxing order dated June 8, 1938, made in Colonel Rogers' estate, the tax liability was fixed upon a gross estate of $22,297,207.02. In arriving at that amount the appraiser and the Surrogate excluded: (a) $377,649.86, being the total of the amounts received outright by the wife and the daughter due to the partial invalidity of the trusts; and (b) $3,239,483.76, being the value of the life estates received by the wife and the daughter.

The Tax Commission appealed from the *pro forma* order only insofar as it excluded the value of the wife's life estate, amounting to $1,492,806.88, and the value of the daughter's life

estate, amounting to $1,746,676.88. On September 29, 1944, the Surrogate made an order dismissing the Commission's appeal and affirming the *pro forma* order. The Commission appeals.

In determining the value of Colonel Rogers' gross estate the learned Surrogate held that the life estates created for his wife and daughter are part of the gross estate of the donor of the power, Rogers, Senior, and that they are taxable in the latter's estate. (183 Misc. 1052.) In so holding, the Surrogate declined to follow a decision of the United States Supreme Court, where, for the purpose of determining the Federal tax against Colonel Rogers' estate, it was held that the value of all the property subject to the power of appointment (including the value of the trusts for the wife and daughter) had passed by the exercise of the power and must be included in the gross estate. (*Estate of Rogers* v. *Commissioner*, 320 U. S. 410, decided in 1943.)

The Surrogate followed a prior decision of our Court of Appeals, where it was held that if a beneficiary, by the exercise of the power of appointment, receives a bequest which has a value equal to or less than the bequest he would have received under the original donor's will in default of the exercise of the power, then the bequest is taxable in the estate of the donor and not in the estate of the donee; whereas if the value of the bequest received by the exercise of the power is greater, only then is the bequest taxable in the estate of the donee. (*Matter of Duryea,* 277 N. Y. 310, decided in 1938.)

This court must now determine whether to follow the United States Supreme Court or our Court of Appeals. For the reasons hereinafter stated, I believe we should follow the United States Supreme Court, principally because I believe the Court of Appeals would be constrained to do so if this case were now before it.

The identity of the language in the State and Federal tax statutes is not a coincidence. The State statute was changed in 1930 in order to make it conform, both in word and in spirit, to the Federal statute. In that year the Legislature added article 10-C of the Tax Law, which changed the basic structure of its tax against decedents' estates. Following the Federal plan, the State substituted one uniform estate tax for the double system of inheritance and transfer taxes. The express purpose of the change was to adopt the Federal system and to attain uniformity with it as far as possible. (N. Y. Legis. Doc., 1930, No. 69, pp. 195, 206; *Matter of Cregan,* 275 N. Y. 337, 341; *Matter of Pratt,* 262 App. Div. 240 [Second Dept.], affd., 289 N. Y. 621; *Matter of Chollet,* 148 Misc. 782, 784.)

In reaching its conclusion in the *Rogers* case (*Estate of Rogers* v. *Commissioner*, 320 U. S. 410) that all the property appointed by Colonel Rogers in the exercise of his power is part of his gross taxable estate, the Supreme Court of the United States, speaking through Mr. Justice FRANKFURTER, said: "For the purpose of ascertaining the corpus on which an estate tax is to be assessed, what is decisive is what values were included in dispositions made by a decedent, values which but for such dispositions could not have existed. That other values, whether worth more or less as to some of the beneficiaries, would have ripened into enjoyment if a testator had not exercised his privilege of transmitting property does not alter the fact that he and no one else did transmit property which it was his to do with as he willed. And that is precisely what the federal estate tax hits — an exercise of the privilege of directing the course of property after a man's death. * * *.

" Whether by a testamentary exercise of a general power of appointment property passed under § 302 (f)▌ is a question of federal law, once state law has made clear, as it has here, that the appointment had legal validity and brought into being new interests in property. * * * Congress used apt language to tax dispositions which came into being by the exercise of a testamentary privilege availed of by a decedent and which in no other way could have come into being. Such is the present case. To bring about the results which decedent sought to bring about, he had to deal with the whole of the corpus over which he had the power of disposition. To give what he wanted to give and to withhold what he wanted to withhold, Rogers Jr. had to do what he did. And so what is taxed is what Rogers Jr. gave, not what Rogers Sr. left. * * *.

" Nothing that was decided or said in *Helvering* v. *Grinnell*, 294 U. S. 153, stands in the way of this conclusion. Where a donee of a power merely echoes the limitations over upon default of appointment he may well be deemed not to have exercised his power, and therefore not to have passed any property under such a power. That case is a far cry from this To suggest that all the property necessary to effectuate the arrangements made by decedent's will did not constitute property passing under his testamentary power would disregard the fact that he had complete dominion over this property and disposed of all of it as his fancy, not at all as his father's will, dictated. Indulgence of that testamentary fancy to the full extent assessed by the Commissioner is what § 302 (f) taxes."

This reasoning is sound. The beneficiaries here actually have taken under Colonel Rogers' will and solely in accordance with his dispositions. Full effect was given to his exercise of the power.

The decision of the United States Supreme Court in the *Rogers* case (320 U. S. 410, *supra*) is in accord with other decisions, both State and Federal. Thus, it has been held that title, ownership or enjoyment is immaterial, for " an estate tax is an excise laid in respect to the privilege of transmitting property rights at death." (*Matter of Vanderbilt,* 281 N. Y. 297, 315, affd. *sub nom. Whitney* v. *Tax Commission,* 309 U. S. 530.) " It is the practical transfer through the exercise of the power by will that is taxed and nothing else." (*Matter of Delano,* 176 N. Y. 486, 494.) The exercise of the power to determine the succession and enjoyment of the property " is precisely the privilege which the state confers and upon which it seizes for the imposition of a tax," and not upon its ownership or enjoyment by the decedent or the ultimate beneficiaries. " It is enough that one person acquires economic interests in property through the death of another person, even though such acquisition is in part the automatic consequence of death or related to the decedent merely because of his power to designate to whom and in what proportions among a restricted class the benefits shall fall." (*Whitney* v. *Tax Commission,* 309 U. S. 530, 538–539.)

We need not consider what the situation would have been if the beneficiaries had expressly renounced all right to take under the will of Colonel Rogers. In such a case, of course, there can be no " passing " of property under the power, as required by the taxing statute, and, hence, the property could not be taxed as part of the donee's estate. (*Helvering* v. *Grinnell,* 294 U. S. 153, 155, affg. *sub nom. Grinnell* v. *Commissioner of Internal Revenue,* 70 F. 2d 705, 707.) Nor need we consider what the situation would have been if there were an exact equivalence between the amount which the beneficiaries receive by the exercise of the power and in default of its exercise. In the latter case it has been held that the beneficiary takes under the donor's will. This conclusion is reached either on the theory that, regardless of the beneficiary's intention, he will be deemed to have elected to renounce his right to take under the donee's will, or on the theory that the donee, in fact, did not exercise the power and no property passed thereunder, since the result is exactly the same as if there had been no execution of the power. (*Matter of Duryea,* 277 N. Y. 310; *Matter of Lansing,* 182 N. Y. 238, 243–245; *Matter of Hoffman,* 161

App. Div. 836, affd. on opinion below 212 N. Y. 604; *Matter of Chauncey*, 102 Misc. 378, 384, 385, affd. 187 App. Div. 952; *Matter of Chapman*, 133 App. Div. 337, 138 App. Div. 923, affd. 199 N. Y. 562.)

The difficulty in this case is engendered by the fact that, prior to the United States Supreme Court decision in the *Rogers'* case (320 U. S. 410, *supra*), the courts of this State, in a long line of decisions culminating with *Matter of Duryea* (*supra*), established this rule: that where, by the exercise of a power of appointment a beneficiary receives the same or less than he would have received under the original will of the donor in default of the exercise of the power, then the bequest is deemed to have come to the beneficiary under the donor's will and for that reason is not taxable as part of the estate of the donee. While this rule had its genesis in the theory that the beneficiary elected, whether such election be a fact or a fiction, to take under the will of the donor of the power, it has been invoked without regard to such election. (*Matter of Duryea*, 277 N. Y. 310; *Matter of Lansing*, 182 N. Y. 238, 243–245; *Matter of Slosson*, 216 N. Y. 79, 82; *Matter of King*, 217 N. Y. 358, 360, 361; *Matter of Haggerty*, 128 App. Div. 479, affd. 194 N. Y. 550; *Matter of Chapman*, 133 App. Div. 337, 138 App. Div. 923, affd. 199 N. Y. 562; *Matter of Chauncey*, 102 Misc. 378, 384, 385, affd. 187 App. Div. 952; *Matter of Canda*, 114 Misc. 161, revd. on other grounds, 197 App. Div. 597; *Matter of Vanderbilt*, 163 Misc. 667, 670, 671, affd. on other grounds, 255 App. Div. 776, 281 N. Y. 297, *sub nom. Whitney* v. *Tax Commission*, 309 U. S. 530; *Matter of Lichtenstein*, 177 Misc. 320, 326, 327.)

The effect of the rule is that if the beneficiary receives some additional benefit or advantage by the exercise of the power, he is deemed to take under the donee's will, whereas if he does not receive such benefit or advantage he is deemed to take under the donor's will. (*Matter of Taylor*, 209 App. Div. 299, 301, affd. 239 N. Y. 582; *Matter of Cooksey*, 182 N. Y. 92, 98.) In other words, if the exercise of the power leaves the bequest or gift within the compass of the donor's gift, the beneficiary may take it as part of the latter's estate.

The Circuit Court of Appeals for the Third Circuit (*Lewis* v. *Rothensies*, 138 F. 2d 129; *Rothensies* v. *Fidelity-Philadelphia Trust Co.*, 112 F. 2d 758), and the Circuit Court of Appeals for the Fourth Circuit (*Legg's Estate* v. *Commissioner of Internal Revenue*, 114 F. 2d 760), following *Matter of Lansing* (182 N. Y. 238), applied the same rule in determining the gross estate under the Federal statute. The Circuit Court

of Appeals for the Second Circuit (*Commissioner of Internal Revenue* v. *Rogers' Estate,* 135 F. 2d 35), reached a different conclusion. It was to settle the asserted conflict between the Second and the Third and Fourth Circuits that the United States Supreme Court granted certiorari. It subsequently affirmed the determination of the Circuit Court of Appeals for the Second Circuit, although on different grounds.

While in *Matter of Duryea* (277 N. Y. 310, *supra*) both the old and present State Tax Laws were considered, the Court of Appeals predicated its conclusion. on the old statute and old cases, that is, cases which had been decided prior to the enactment of the present article 10-C of the Tax Law, by which the Legislature sought to make the State statute conform to the Federal statute.

But the basis of the New York rule established by *Matter of Duryea* (*supra*) and the other old New York cases, and the basis of the decisions of the Federal Circuit Courts of Appeals which followed the New York rule, is that the beneficiary, when he receives the same or less by the exercise of the power (than he would have received in default of its exercise) is deemed to take under the will of the original donor. Recognizing the existence of this rule, the United States Supreme Court in the *Rogers* case, citing the *Duryea* case (*supra*), pointed out that "whether local tax legislation deems the appointed interest to derive from the will of the donor or that of the donee of the power" is a matter "of complete indifference to the federal fisc." (320 U. S. 410, 413-414.) The reason for such indifference is that the exercise of the power does, in fact, result in the passing of property; and that is precisely what the taxing statute is aimed at — the passing of property by the exercise of the power. The statute is not concerned with the artificial or fictional distinction that under certain circumstances the beneficiary will be deemed to take under the will of the donor and not under the will of the donee.

The doctrine as enunciated by the United States Supreme Court in the *Rogers* case (*supra*) furnishes a practical and realistic approach to the problem of taxing powers. It ignores both the title and its source and taxes the substance, namely, the execution of the power which permits the beneficiary to enjoy the property.

Whether in the *Duryea* case (*supra*) the Court of Appeals would have reached the same conclusion if, prior thereto, the United States Supreme Court had rendered its decision in the *Rogers* case (*supra*), of course no one can say with certainty.

But in the light of recent decisions, I believe it fair to assume that, if the *Rogers* case had antedated the *Duryea* case, the Court of Appeals would not have reached the same conclusion and would have followed the United States Supreme Court. (*Matter of Russell,* 294 N. Y. 99, 103; *Matter of Weiden,* 263 N. Y. 107, 110; *Matter of Pratt,* 262 App. Div. 240, affd. 289 N. Y. 621; *Matter of Erdmann,* 172 Misc. 806; *Matter of Newton,* 177 Misc. 877, 886, affd. 267 App. Div. 913.) I say this not because the decision of the United States Supreme Court, construing a Federal statute identical with a State statute, is " binding " on the State courts, but because to give it effect would promote the Legislature's expressed intention to harmonize as far as possible the meaning and the operation of the State and Federal tax statutes. It was on this theory that in the cases last cited full force and effect were given to subsequent decisions of the United States Supreme Court which were contrary to prior decisions of our State courts.

Accordingly, I believe it is incumbent upon this court to follow the subsequent decision of the United States Supreme Court in the *Rogers* case, particularly since it was rendered in the same case and on the same facts. To do so is simply to apply the well-established principle that " in determining the correctness of a decision the appellate court must apply the law as it exists at the time it makes its determination." (*Matter of Thomas* v. *Board of Standards & Appeals,* 263 App. Div. 352, 358, and cases there cited, reversed on other grounds, 290 N. Y. 109.)

I have not overlooked the fact that on October 21, 1942, Congress amended the Federal tax statute, the amendment, however, being applicable to the estates of decedents dying subsequent to its enactment. (U. S. Code, tit. 26, § 811, subd. [f].) Under this amended statute the definition of property embraced within a decedent's gross estate was broadened to include property as to which the decedent at the time of his death either possessed or exercised a power of appointment. In other words, under the present Federal statute the mere possession of a power, as well as its exercise, is made taxable as part of the donee's estate.

Attention already has been called to the fact that by virtue of Colonel Rogers' exercise of the power his daughter, Millicent, will receive substantially more than she would have received in default of its exercise. Therefore, whether the old rule followed by the Court of Appeals in the *Duryea* case or the new doctrine enunciated by the United States Supreme Court in the *Rogers* case be applied, what the daughter gets

must be deemed to be part of the gross estate of her father and is taxable as such.

The order should be reversed on the law, with costs to appellant payable out of the estate of Colonel Rogers, and the matter remitted to the Surrogate's Court of Suffolk County for the entry of an order fixing the tax, in which will be included, as part of Colonel Rogers' gross estate, the value of the life estates for his wife and daughter which he created from the property subject to the power.

CLOSE, P. J., HAGARTY, LEWIS and ALDRICH, JJ., concur.

Order reversed on the law, with costs to appellant payable out of the estate of Henry H. Rogers, Jr., and the matter remitted to the Surrogate's Court of Suffolk County for the entry of an order fixing the tax, in which will be included, as part of said Henry H. Rogers' gross estate, the value of the life estates for his wife and daughter which he created from the property subject to the power. [See amended decision, *post*, p. 941.]