No. 19,840.

People of the State of Colorado, etc., *v.* M. Bernard Cooke, Executor of the Estate of Barbara Hatch Hartshorne, Deceased.

(370 P. [2d] 896)

Decided April 23, 1962

Mr. DUKE W. DUNBAR, Attorney General, Mr. NEIL TASHER, Assistant and Inheritance Tax Commissioner, Mr. R. ROBERT IRWIN, JR., Assistant, for plaintiffs in error.

Messrs. HOLLAND and HART, Mr. JAY W. TRACEY, JR., Mr. DON D. ETTER, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS case involves the assessment of the Colorado inheritance tax in the estate of Barbara Hatch Hartshorne, deceased.

Plaintiffs in error will be referred to as the State or the Commissioner. The defendant in error was the objector in the trial court and will be referred to herein as Executor.

Barbara Hatch Hartshorne died domiciled in the State of Colorado on June 19, 1957. Her last will and testament was admitted to probate and letters testamentary were issued appointing M. Bernard Cooke as the Executor thereof.

On December 24, 1931, a Trust Agreement was entered

into between decedent's mother, a resident of Connecticut, as Grantor, and the Irving Trust Company of New York, as Trustee. Prior to and at the date of decedent's death, the trust assets consisting of intangibles were at all times situated in the State of New York.

The decedent, who at the time of the creation of the trust was a resident of the State of Connecticut, was designated income beneficiary for life and donee of a general power of appointment.

On June 20, 1949, decedent, while a resident of New Jersey, reduced her general power to a special power, thereby limiting her right to appoint the principal of the trust to her spouse, her descendants, a brother or sister, or descedants of a brother or sister.

Subsequent to the creation of the trust, additional assets were transferred to the trust by decedent; these assets amounted to $283,974.82 on the optional valuation date. The entire trust was valued at $662,053.62.

In 1956 the decedent moved to Colorado and became domiciled here. She executed her last will and testament on April 4, 1957, wherein she provided that it was her intention not to exercise the power of appointment conferred upon her by the trust agreement of December 24, 1931. Since decedent failed to exercise such power, the trust assets were to be distributed to decedent's children in accordance with the terms of the trust agreement.

On June 30, 1958, the "Colorado Inheritance Tax Application" was filed with the Commissioner, and on July 16, 1958, an election was filed to have the Colorado inheritance tax determined on an optional valuation date, pursuant to which the "Optional Colorado Inheritance Tax Application" was filed on September 12, 1958. The Commissioner assessed Colorado inheritance tax on the entire value of the New York trust.

Thereafter, the Executor filed objections and protest to the report of the Commissioner assessing the tax on the entire value of the New York trust.

The Commissioner also disallowed certain deductions claimed by the Executor to which the Executor also filed objections. The deductions claimed can be grouped in two categories. The first group comprises items related to the sale of real property and total $2,101.15; the second group, totaling $867.08, consists of items pertaining to the care and maintenance of the real property.

The trial court ruled that the assessment of the Colorado inheritance tax on the entire value of the New York estate was unconstitutional and was violative of the due process clause of the State and Federal Constitutions, and ordered that the assets of the trust not attributable to the deceased should be excluded from the state inheritance tax. The court also held that the deductions claimed by the Executor as expenses of the sale of realty and the amount expended for commissions in effecting the sale of the realty were allowable as expenses of administration.

I. *Did the trial court err in holding that the assets of the trust, consisting of intangible personal property situated in New York, were not taxable in Colorado because the decedent, holder of a special power of appointment and a resident of Colorado at the time of her death, failed to exercise such power, resulting in the trust assets passing by the terms of the trust?* The question is answered in the affirmative.

The Colorado statute applicable to the situation here is C.R.S. '53, 138-4-12, which provides:

"Whenever any person, institution or corporation shall exercise a power of appointment derived from any disposition of property, such appointment when made, shall be deemed a taxable transfer in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any persons, institution or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided there-

for, in whole or in part, a transfer taxable under the provisions of this article shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

It is agreed by all parties that the statute by its explicit terms makes taxable any trust asset over which the deceased had the power of appointment whether exercised or not. It is the Executor's contention, however, that when applied to a non-exercised special power of appointment held over intangibles located outside the domicile of the decedent possessing the power, the statute is unconstitutional.

It is now well settled that the state in which the owner of intangibles is domiciled may impose an inheritance tax on those intangibles even though the paper evidence of such intangibles is situated outside the state of domicile of the decedent owner. *Central Bank v. Kelly,* 319 U.S. 94, 63 S. Ct. 945, 87 L. ed. 1282.

The authority of the state over the owner, the obligations which domicile creates, and the practical necessity of associating intangibles with the person of the owner at his domicile, representing rights which he may enforce against others — these are the foundations upon which the jurisdiction to tax of the domiciliary state rests. Such a tax is not violative of the due process clause of the Federal constitution. *Curry v. McCanless,* 307 U.S. 357, 59 S. Ct. 900, 83 L. ed. 1339.

What constitutes ownership of intangible assets for the purpose of inheritance tax has been determined by the Supreme Court of the United States in *Graves v. Schmidlapp,* 315 U. S. 657, 62 S. Ct. 870, 86 L. ed. 1097, where it is said:

"For purposes of estate and inheritance taxation, the

power to dispose of property at death is the equivalent of ownership. * * * "

Applying this definition, the Court in *Graves v. Schmidlapp,* supra, held constitutional a New York succession tax upon assets of a Massachusetts trust where the decedent, a resident of New York, possessed and exercised a general power of appointment contained in the Massachusetts trust. The decision was based upon the following rationale:

" * * * Intangibles, which are legal relationships between persons and which in' fact have no geographical location, are so associated with the owner that they and their transfer at death are taxable at the place of his domicile, where his person and the exercise of his property rights are subject to the control of the sovereign power. His transfer of interests in intangibles, by virtue of the exercise of a donated power instead of that derived from ownership, stands on the same footing. In both cases the sovereign's control over his person and estate at the time of his domicile, and his duty to contribute to the financial support of government there, afford adequate constitutional basis for the imposition of a tax. * * * "

■ Nor does the failure to exercise the general power of appointment change the situation. A succession tax in the state of the domicile of the decedent on intangibles situated in another state does not violate the due process clause by reason of the fact that there is a failure to exercise the general power of appointment. *Graves v. Elliott,* 307 U.S. 383, 59 S. Ct. 913, 83 L. ed. 1356. In *Elliott,* supra, New York imposed a transfer tax on the intangible assets of a trust situated in Colorado where the decedent, who was a resident of New York, held, but failed to exercise, a general power of appointment.

■ A special power of appointment is in the same class as a general power of appointment for purposes of inheritance or estate taxes. *Whitney v. State Tax Commission,* 309 U.S. 530, 60 S. Ct. 635, 84 L. ed. 909.

█ The "ownership" of the intangibles, as it has been defined for succession tax purposes, is perhaps more limited when the power of appointment is special, but a decedent possessing a special power of appointment, nonetheless determines the utlimate disposition of the property even though the objects of his bounty are more restricted than under a general power.

It is abundantly clear from the authorities above cited that a general power of appointment, exercised or non-exercised, is a proper foundation upon which to impose a succession tax, even though the intangible assets are located in a state other than that where the person possessing the power of appointment is domiciled. It is also clear that a special power of appointment exercised, is subject to tax under the same circumstances. But the Executor contends that, where a special power of appointment is *not* exercised by a decedent, an attempt to tax the intangibles received by the beneficiaries under the terms of the trust instrument is unconstitutional.

█ We have stated many times that where a statute is attacked on grounds that it is unconstitutional, every presumption is in favor of its validity and only a clear and demonstrable invasion of rights will authorize a declaration of unconstitutionality. No cases are cited by the Executor holding that a transfer resulting from an unexercised special power is exempt from succession tax. On the other hand, there is good authority that an inheritance tax levied upon the heirs or legatees where there is a non-exercised special power under circumstances where both the owner and the assets are in the same state is valid against the claim of unconstitutionality by reason of the due process clause. *Burnham v. Stevens,* 212 Mass. 165, 98 N.E. 603; *Montague v. State,* 163 Wis. 58, 157 N.W. 508. In *Burnham,* supra, it is said:

" * * * If the donee had exercised the power of appointment it seems plain that although the power was a limited one the statute would have applied. * * * It would have applied because the donee would have been

regarded as the source of the succession. By his failure to act he equally affected the course of the succession according to the doctrine laid down in Minot v. Treasurer & Receiver General, 207 Mass. 588, 93 N.E. 973, 33 L.R.A. (N.S.) 236. Until the death of the donee and his exercise or failure to exercise the power of appointment it could not be known in what proportions the children or grandchildren would take. Until that event happened the estate in the children did not become complete and the succession was not fully determined. It cannot be said therefore that the estate had so vested in the children as to render the imposition of a tax under the statute above referred to unconstitutional."

We fail to perceive a distinction between the situation which arises from the non-exercise of a general power and that which arises from the non-exercise of a special power. In either case, beneficiaries named in the trust receive their bounty by the inaction of the decedent. The failure to act affects the course of succession just as fully as if the power had been exercised, and until the failure is complete the succession is not fully determined. Where the donee of the power of appointment holds the power, he is in control of the succession. He can allow it to go to the persons named in the trust or he can appoint others within the limits of the power of appointment — limits which, by the way, the donee in this case imposed upon herself.

We conclude that the statute is not unconstitutional as applied to the facts of this case and that the Commissioner properly included the entire corpus of the New York trust in his report.

It is of no consequence that the statute in question was adopted after the creation of the trust. The tax is a succession tax and is imposed upon the transfer of property. *Millikin v. People,* 106 Colo. 6, 102 P. (2d) 901. The transfer involved here was not complete at the time the statute was adopted and did not become so until default in the exercise of the special power of appoint-

ment. Under such circumstances, the statute is not invalid as operating retrospectively. *Saltonstall v. Saltonstall,* 276 U.S. 260, 48 S. Ct. 225, 72 L. ed. 565; *Montague v. State,* supra.

II. *Did the court err in holding that the expenses of the sale of realty, under the circumstances, were deductible items in computing the inheritance tax?* We answer the question in the negative.

▮ The trial court found that there were debts and charges against the estate exceeding the value of the personal property available in the estate to meet these charges, and that under the circumstances the sale of the realty was necessary. When a sale of realty becomes necessary in an estate because personal property subject to the control of the probate court is insufficient to pay the claims filed in the probate proceedings, the expenses of such sale are expenses of administration deductible from the inheritance tax. The county court, after examining the evidence, made its finding that the sale was necessary in order to satisfy all claims which the estate was required to pay in the probate proceeding. We will not disturb the findings of the trial court where, as here, the matter is within its discretion and there is evidence to support its findings. *Brenaman v. Willis,* 136 Colo. 53, 314 P. (2d) 691.

III. *Did the trial court err in permitting deductions for expenses incurred in the maintenance of the real estate under the circumstances here?* The question is answered in the affirmative.

▮ The trial court found that the Executor was entitled to deduct his expenses for guard service, insurance, utility charges, lawn supplies and for certain repairs. The finding was based on the reasoning that since the fiduciary was required to preserve the real estate under C.R.S. '53, 152-10-13, expenses incurred in carrying out that duty would be deductible for inheritance tax purposes.

In 1927, the general assembly provided specifically that

"expenses of administration" may be deducted in determining the taxable transfer. Prior to that time there was no specific authorization for the deduction of expenses of administration. The courts had, however, by judicial decision, determined that necessary expenses of administration were deductible from the gross estate before computation of the tax.

In *People v. Palmer's Estate* (1914), 25 Colo. App. 450, 139 Pac. 554, the Court was asked to permit a deduction as expenses of administration for the upkeep of Glen Eyrie, the home of the decedent, General Palmer. It was stipulated therein that Glen Eyrie was the home of General Palmer; that it was non-income producing property; and that it required the attention of watchmen and caretakers as well as other expenses. The fair and reasonable expense of maintaining and preserving the property was also agreed upon. The statute then applicable, Laws of 1903, Chap. 181, §70, also required the fiduciary to preserve the estate in almost the same language as the present statute. The Court, in *Palmer*, held that such expenses were not expenses of administration and were not deductible since title to realty in this state passed at the time of the death and the tax on the transfer became effective as of the date of the death.

At the time the statute in its present form was adopted, the *Palmer* decision and the judicial definition of "expenses of administration" contained therein had not been overruled. Whatever the rule may be in other jurisdictions with respect to the meaning of the phrase "expenses of administration," we must here apply the familiar rule that it is to be presumed that a legislature is cognizant of and adopts the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation. See 82 C.J.S. *Statutes,* §316.

That the legislature was aware of the *Palmer* decision when it adopted the language of the prior statute is evidenced by the fact that the new act explicitly changes

the law with respect to the other matters decided in *Palmer*.

The judicial definition of the term "expenses of administration" has been in effect since 1914 and has gone unchallenged in this Court since that time. If it is to be changed now it must be done by the legislature.

The Executor's argument that the fiduciary was required by statute to expend money to protect the real estate does not affect the problem here. Expenditures authorized by a court or required by a statute are not necessarily deductions for inheritance tax purposes, although otherwise chargeable to administration. Deductions for inheritance tax purposes are made so by statute. Here, the language of the statute construed in the light of the earlier judicial decision does not make them deductible.

The judgment, to the extent it permits the deduction of expenses connected with the sale of real estate, is affirmed. In all other respects the judgment is reversed and the cause remanded to the trial court with directions to enter an order approving the report of the Inheritance Tax Commissioner after allowing deduction of the expenses involved in the sale of real estate.