No. 13109

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

_____

IN THE MATTER OF THE ESTATE
OF GRETCHEN G. WARD, Deceased.

_____

Appeal from:   District Court of the Sixth Judicial District,
               Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert W. Corcoran argued, Helena, Montana

    For Respondent:

        Davidson, Veeder, Roberts and Baugh, Billings,
        Montana
        David A. Veeder argued, Billings, Montana

_____

                          Submitted:  November 10, 1975

                            Decided:  DEC - 9 1975

Filed: JEC   9/5

*Thomas J. Kearney*
                              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by the Montana Department of Revenue from an order of the district court, Park County, determining an inheritance tax of $37,298.09 in the Gretchen G. Ward estate.

At issue is whether the value of English trust property consisting of stocks and bonds subject to decedent's special power of appointment is taxable under Montana inheritance tax laws. The district court held it nontaxable. We reverse.

Decedent is Gretchen G. Ward who died domiciled in Montana on May 8, 1973. Her will was admitted to probate in the district court of Park County, Montana. During the course of probate, a dispute arose between the Montana Department of Revenue and the executors of her estate over the amount of state inheritance taxes owing. The crux of the dispute was whether the value of certain English trust property over which decedent held a special power of appointment should be included in her gross estate subject to Montana inheritance taxes. The executors claimed it should not, excluded it, and returned a gross taxable estate of $926,864.30 and an inheritance tax of $37,298.09. The Department of Revenue contended that the gross taxable estate should be increased by $355,274.68, the value of the English trust property on the date of decedent's death, and that an additional inheritance tax of $27,421.96 was due the state.

Decedent's father, George Gee, was a lifelong resident of England and had never been a resident of Montana or the United States. He established a trust under the terms of his will and provided that all trust income was to be paid decedent during her lifetime. Mr. Gee's will also granted decedent a special power of appointment over the corpus of the trust, i.e. a limited power to dispose of the trust property. Decedent was given the power to dispose of the corpus " * * * to her children or more remote

issue living at her death * * * as she may by deed or will or codicil appoint * * *," but if decedent did not exercise such power of appointment the corpus was to be distributed upon her death " * * * among such children or remoter issue in equal shares per stirpes * * *." Decedent could not appoint the corpus to herself or her estate.

Decedent died without exercising her power of appointment. Pursuant to Mr. Gee's will, the children and more remote issue entitled to the corpus of the trust are: William George Ward, son; Gretchen Ward D'Ewart, daughter; Jean Ward Close, daughter; and Wanda K. Swainson, granddaughter.

The trust property has always been physically situated in England. It has been administered in England in accordance with English law. It has been subjected to English estate and income taxes. The trust property was subject to distribution under the terms of the trust pursuant to the laws of England.

Following hearing and submission of briefs, the district court held, in effect, that the value of the English trust property was not subject to Montana inheritance taxes and determined the inheritance tax accordingly. From this order, the Department of Revenue appeals.

The issues on appeal can be summarized in this manner:

(1) Is the value of the English trust property exempt from Montana inheritance taxes by treaty between the United States and the United Kingdom, 60 Stat. 1391?

(2) Is section 91-4404, R.C.M. 1947, of the Montana inheritance tax law unconstitutional as applied to this case?

(3) If not, should credit be given for payment of English death taxes against the Montana inheritance tax?

The executor's first contention is that Montana has no jurisdiction to levy an inheritance tax on the English trust

- 3 -

property under the provisions of a tax treaty between the United

States and the United Kingdom.  This treaty is found in 60 Stat.

1391 and was proclaimed by the President on July 30, 1946.  Its

stated purpose is:

> " * * * the avoidance of double taxation and the
> prevention of fiscal evasion with respect to taxes
> on the estates of deceased persons * * *".

The taxes subject to the treaty are:

> "(a) In the United States of America, the Federal
> estate tax, and (b) In the United Kingdom of Great
> Britain and Northern Ireland, the estate duty imposed
> in Great Britain".  Art. I, Sec. (1).

The treaty applies " * * * to any other taxes of a substantially

similar character imposed by either Contracting Party  subsequently

to the date of signature of the present Convention or by the gov-

ernment of any territory to which the present Convention applies

under Article VIII or Article IX".  Art. I(2).  Article VIII pro-

vides a procedure for the extension or limitation of the scope

of the treaty to either contracting party's " * * * colonies,

overseas territories, protectorates, or territories in respect

of which it exercises a mandate, which imposes taxes substantially

similar in character to those which are the subject of the present

Convention.* * *"  Article IX relates entirely to estate duties

imposed in Northern Ireland.  The treaty has not been extended to

cover state inheritance taxes since its inception.

The treaty at its inception did not cover state inheri-

tance taxes.  The Commissioner of Internal Revenue of the United

States, with approval of the Secretary of the Treasury, adopted

regulations implementing the treaty, among which was the follow-

ing provision:

> "The provisions of the convention are restricted
> to the estate tax imposed by the United States,
> the estate duty imposed in Great Britain, and the
> estate duty imposed in Northern Ireland, and do
> not comprehend any of the estate, inheritance,
> legacy, and succession taxes imposed by the States

Territories, the District of Columbia, and pos-
sessions of the United States or the legacy and
succession duties imposed in Great Britain and
Northern Ireland. (Articles I and IX of the
Convention.)" Treasury Dept. Regulations, Sec.
82-102.

Thus the tax treaty has no application to Montana's inheritance

taxes, and the provisions of the treaty are irrelevant to any

issue in the instant case.

The principal issue is whether the application of section

91-4404, R.C.M. 1947, to the facts of this case violates the "due

process" clause of the Federal and State Constitutions. In analyz-

ing this question we find no basis for any distinction between

the "due process" clause in the Federal Constitution and that in

the State Constitution as applied to this issue.

The fundamental contention of the Department of Revenue

is that domicile alone is a constitutionally permissible basis

for imposing an inheritance tax here, and there is no distinction

as to taxability between a general or special power of appoint-

ment, whether exercised or not exercised. The ultimate conten-

tion of the executors on the other hand is that there are only

two constitutionally permissible bases on which a domiciliary

state can impose an inheritance tax on intangibles located in a

foreign country, viz. the "ownership" principle and the "benefit"

principle, neither of which is satisfied under the facts of this

case.

Section 91-4404 provides:

"Transfers under power of appointment. Whenever
any person or corporation shall exercise a power
of appointment derived from any disposition of
property, made either before or after the passage
of this act, such appointment, when made, shall be
deemed a transfer taxable under the provisions of
this act, in the same manner as though the property
to which such appointment relates belonged absolute-
ly to the donee of such power, and had been be-
queathed or devised by such donee by will; and
whenever any person or corporation possessing such
a power of appointment so derived shall omit or

- 5 -

> fail to exercise the same within the time
> provided therefor, in whole or in part, a
> transfer taxable under the provisions of this
> act, shall be deemed to take place to the ex-
> tent of such omission or failure, in the same
> manner as though the persons or corporations
> thereby becoming entitled to the possession or
> enjoyment of the property to which such power
> related, had succeeded thereto by a will of the
> donee of the power failing to exercise such power,
> taking effect at the time of such omission or
> failure." (Emphasis supplied.)

A review of the broad constitutional principles applic-
able to state inheritance taxation of intangibles is appropriate
at the outset. Rights in intangibles are not related to physical
things and the power of the government over them cannot be exer-
cised through control over any physical thing whose situs can be
fixed in one place; rights in intangibles are but relationships
between persons which the law recognizes by attaching to them
certain sanctions enforceable in the courts; they cannot be dis-
sociated from the persons from whose relationships they are de-
rived. Curry v. McCanless (1939), 307 U.S. 357, 59 S.Ct. 900,
83 L ed 1339. The constitutional and jurisdictional basis for
the imposition of a state inheritance tax on intangibles is the
state's control over the person and estate of its domiciliary
and his duty to contribute to the support of the government there.
Central Hanover Bank Co. v. Kelly (1943), 319 U.S. 94, 63 S.Ct.
945, 87 L ed 1286; Graves v. Schmidlapp (1942), 315 U.S. 657, 62
S.Ct. 870, 86 L ed 1097. The imposition of a state inheritance
tax on intangibles on this basis does not violate the "due process"
clause of the United States Constitution. Graves v. Schmidlapp,
supra; Central Hanover Bank Co. v. Kelly, supra. Nor does the
imposition of an inheritance tax by another state render an in-
heritance tax of the domiciliary state constitutionally imper-
missible. Curry v. McCanless, supra.

The right of a state to impose an inheritance tax on a
power of appointment, i.e. a right to control the disposition of

- 6 -

property, is constitutionally well established. Bullen v. Wisconsin (1916), 240 U.S. 625, 36 S.Ct. 473, 60 L ed 830; Saltonstall v. Saltonstall (1928), 276 U.S. 260, 48 S.Ct. 225, 72 L ed 565; Curry v. McCanless, supra; Graves v. Elliott (1939), 307 U.S. 383, 59 S.Ct. 913, 83 L ed 1356; Whitney v. Tax Commission (1940), 309 U.S. 530, 60 S.Ct. 635, 84 L ed 909; Graves v. Schmidlapp, supra. A power of appointment over property is equivalent to ownership of the property for state inheritance tax purposes. Bullen v. Wisconsin, Graves v. Elliott, Curry v. McCanless, supra. Thus, the value of the property is a proper measure of a state inheritance tax. Graves v. Elliott, supra.

A state may constitutionally impose an inheritance tax on a general (unlimited) power of appointment over intangibles which is exercised. Saltonstall v. Saltonstall, Curry v. McCanless, Graves v. Schmidlapp, supra. A state may also constitutionally impose an inheritance tax on a general power of appointment over intangibles which is not exercised. Graves v. Elliott, supra. And a state may constitutionally impose an inheritance tax on an exercised special power of appointment, i.e. where the power of disposition over the property cannot be used to transfer the property to the holder of the power of appointment or his estate. Whitney v. Tax Commission (1940), 309 U.S. 530, 60 S.Ct. 653, 84 L ed 909. As far as we have been able to determine, there is no United States Supreme Court ruling on the constitutionality of a state inheritance tax on an unexercised special power of appointment.

As we understand it, the executors do not attack the constitutionality of Montana's statute imposing such an inheritance tax on its face. Instead, they contend that the imposition of such inheritance tax as applied to the instant case violates "due process", principally because the sole contact between the state

of Montana and the English trust property is the domicile of a decedent who did not exercise her special power of appointment and that such contact is an insufficient basis for imposing an inheritance tax.

There are two decisions of state supreme courts on this issue reaching opposite conclusions. The Colorado Supreme Court upheld the constitutionality of such inheritance taxation, People v. Cooke (1962) 150 Colo. 52, 370 P.2d 896, 900, while the Ohio Supreme Court denied the state's power, Schneider v. Laffoon (1965), 4 Ohio St.2d 89, 212 N.E.2d 801.

In Cooke, a Colorado domiciliary held a special power of appointment over intangibles in a New York trust. She died without exercising her special power of appointment, expressly providing in her will that she did not intend to exercise it. The trust property, none of which was physically situated in Colorado, was distributed to her children under the provisions of the New York trust. Colorado assessed an inheritance tax on the entire value of the New York trust property under a statute essentially the same as Montana's. The Colorado Supreme Court held such inheritance taxation did not violate the "due process" clause of either the Federal and State Constitution. The rationale of the Colorado Court is summarized in the following language:

> "We fail to perceive a distinction between the situation which arises from the non-exercise of a general power and that which arises from the non-exercise of a special power. In either case, beneficiaries named in the trust receive their bounty by the inaction of the decedent. The failure to act affects the course of succession just as fully as if the power had been exercised, and until the failure is complete the succession is not fully determined. Where the donee of the power of appointment holds the power, he is in control of the succession. He can allow it to go to the persons named in the trust or he can appoint others within the limits of the power of appointment--limits which, by the way, the donee in this case imposed upon herself."

In Schneider, an Ohio domiciliary held a special power

- 8 -

of appointment over intangibles in a Kentucky trust. The trust was created by a person who was never a resident of Ohio, the trust property was always outside Ohio in the custody of nonresident trustees, the donee of the power of appointment had no power to appoint any of the trust property to herself or her estate and could only exercise her power of appointment inter vivos in writing signed by her and delivered to a nonresident trustee. She did not exercise her special power of appointment and the trust property apparently passed to two children under the provisions of the Kentucky trust. Under an inheritance tax statute similar to that of Montana, the Ohio Supreme Court held that neither the exercise nor the nonexercise of the special power of appointment by its domiciliary was taxable as a succession. The gist of its rationale was that imposition of an inheritance tax under the facts of the case was unconstitutional where succession to the trust property was not dependent on Ohio law and no privilege by which the property passed was conferred by Ohio law.

While some differences exist in the facts of the two cases, they are unimportant to the divergent principles on which the two decisions rest. As applied to inheritance taxation of a special power of appointment over intangibles in a foreign trust, Colorado recognizes domicile alone as a constitutional basis and holds the right to control disposition equivalent to ownership; Ohio denies constitutionality based on domicile alone, requiring some benefit or privilege to be accorded by the laws of the domiciliary state.

We consider the Colorado case the better reasoned and more in accord with the constitutional principles enunciated by the United States Supreme Court. Domicile has long been recognized as a constitutional basis for inheritance taxation without

regard to whether succession was effected under the laws of the state of domicile. Curry v. McCanless, Graves v. Elliott, supra. For purposes of estate and inheritance taxation the power to dispose of property at death is the equivalent of ownership. Graves v. Schmidlapp, supra; Graves v. Elliott, supra. Although both Schmidlapp and Elliott involved an unexercised general power of appointment, an unexercised special power of appointment involves no less the power to dispose of property at death albeit to a more limited extent. The power to control the disposition of property after death is the taxable event, and this control is as effectively maintained by the nonexercise of a special power of appointment as by its exercise. In either case decedent determines the ultimate disposition of the property and the course of succession.

For these reasons we hold that "due process" is not violated by requiring the inclusion of the value of the English trust property on the date of decedent's death in the taxable estate of Gretchen G. Ward under section 91-4404.

The final contention of the executors is that in any event the estate is entitled to credit in the amount of the English death duty paid against the Montana inheritance tax. The answer simply is that there is no law permitting such credit. As previously set forth, the tax treaty between the United States and the United Kingdom (60 Stat. 1391) is inapplicable. The Montana inheritance tax law limits tax credits to inheritance taxes paid to other states and territories of the United States.

Section 91-4412, R.C.M. 1947, is as follows:

> "Credit allowance on inheritance taxes paid by resident decedents to other states. The tax imposed by section 91-4401 to 91-4411 shall, as to a resident of the state of Montana who died domiciled in Montana, be credited with the amount of any valid inheritance, estate, legacy or succession taxes actually paid to any state or territory

of the United States [other than the state
of Montana], or to the District of Columbia.
Provided, however, that the amount to be so
credited shall in no event exceed that amount
which the resident decedent was taxed on that
property in Montana." (Emphasis supplied.)

There are no other provisions of law on which to base a tax credit.

We have noted the subordinate arguments and contentions
of the executors, find them to be without merit, and deem it un-
necessary to discuss them in this opinion. We have answered the
principal contentions of the executors with the reasons for our
rulings.

The order of the district court is reversed. The cause
is remanded to the district court with directions to include an
additional $355,274.68 valuation in decedent's taxable estate, to
increase the inheritance tax owing the state of Montana by an
additional $27,421.96 by reason thereof, and to enter appropriate
orders for determination and payment of the total amount of the
Montana inheritance tax, subject to discount as provided by law,
consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 11 -