STATE OF MISSOURI at the Relation of A. LEE KELSEY, O. G. BALLARD and C. D. SPARKS, Judges of the County Court of Clay County, Relators, v. FORREST SMITH, State Auditor.—75 S. W. (2d) 832.

Court en Banc, October 31, 1934.

*Alan F. Wherritt, James S. Simrall* and *Lawson & Hale* for relators.

*Roy McKittrick*, Attorney-General, and *Covell R. Hewitt*, Assistant Attorney-General, for respondent.

ATWOOD, J.—This is an original proceeding in mandamus by which relators, as judges of the County Court of Clay County, Missouri, seek to compel respondent, as State Auditor of Missouri, to register certain bonds of said county in the amount of $200,000, the proceeds thereof to be used in the construction of a new county court-house.

Respondent has waived the issuance of an alternative writ of mandamus and, taking relators' application as and for such writ, has made return thereto admitting all allegations of fact contained in

relators' application, and further admitting that said bonds should be by him registered but for the fact that the notice calling the special election of March 27, 1934, at which issuance of the bonds was authorized, was published in two newspapers of general circulation published in said county only on March 8, 1934; March 15, 1934 and March 22, 1934, which publication respondent contends was insufficient in time and not in compliance with Section 2906, Revised Statutes 1929. To that return relators have filed a motion for judgment on the pleadings. The parties have submitted the case on briefs and it is before this court on the sole question of the sufficiency of the publication of notice calling said special election. The precise question is whether, under the statute, a full period of twenty-one days must intervene between the first of the three required insertions and the date of the election in order to give validity to the bonds authorized.

Section 2906, Revised Statutes 1929 was enacted in 1919. [Laws 1919, p. 173.] The portion here relevant is as follows:

"The clerk of the court shall give notice of the election by advertisement for three consecutive weeks (three insertions) in one or more newspapers published in such county, or, if there is no newspaper published in such county, then by posting written or printed hand bills in three public places in each voting precinct in the county for twenty-one days prior to the day fixed for the election."

Respondent relies upon the rule announced in Young v. Downey, 150 Mo. 317, 51 S. W. 751, decided in 1899. In that case the provision construed was that notice of order of sale of real estate in the probate court "shall be published for four weeks in some newspaper in the county in which the proceedings are had, or by ten handbills, to be put up at ten public places in said county, at least twenty days before the term of the court at which any such order will be made, in the discretion of the court." [Sec. 25, Chap. 122, p. 498, R. S. 1865.] The court held that under this statute publication of the notice on the 8th, 15th, 22nd and 29th of September, when the first day of the court at which the order of sale was made began on the 2nd day of October thereafter, was insufficient because (l. c. 330) "when the statute requires four weeks' publication of such notices, it does not mean twenty-four days, or any less number than twenty-eight." The notice required by this statute has ever since been uniformly so construed by this court, and the same construction has been applied by both the St. Louis and Kansas City Court of Appeals to the statute requiring that notice of a local option election shall be published in some newspaper published in the county "for four consecutive weeks, and the last insertion shall be within ten days next before such election." [Sec. 3029, R. S. 1899; State v. Brown, 130 Mo. App. 214, 109 S. W. 99; State ex rel. Doran v. Johnson County Court, 138 Mo. App. 427, 429, 122 S. W. 316.]

■ However, as we said in Russell v. Croy, 164 Mo. 69, 91, 63 S. W. 849, "the same words occurring in different statutes of somewhat similar character do not necessarily bear the same interpretation; their meaning is influenced by the particular context and sometimes by the object to be attained by the statute itself." In that case, construing the provision in Section 2, Article XV of the State Constitution to the effect that constitutional amendments proposed by the General Assembly "shall be published weekly in some newspaper, if such there be, within each county in the State, for four consecutive weeks next preceding the general election next ensuing," we held "that the particular four weeks designated were those regular calendar periods, of seven days each, beginning on Sunday, and occurring next before the Tuesday of election day, and that a publication in each of those periods was what the Constitution required."

It is true, as counsel for respondent suggest, that the statute now under consideration does not, as did the constitutional provision above construed, in terms specify that the "consecutive weeks" of publication should be those "next preceding" the election, but it does provide that they shall be "prior to the day fixed for the election." Without pressing the analogy between the words, "next preceding" and "prior to," we pass to a consideration of the words "three insertions" appearing in parentheses immediately after the words "three consecutive weeks."

In State ex rel. Harris v. Hanson, 80 Neb. 724, 737, it is said: "Where the time mentioned by the statute expresses the duration of the notice, the same must be published for and during the time mentioned. Where, however, the time mentioned indicates only the number of times the notice is required to be published, it is satisfied if the notice is published the number of times mentioned." Referring thereto the Supreme Court of Wyoming, in Hay v. Hudson, 224 Pac. 840, 844, said: "This statement, we venture to say, all courts will approve." So, if the interpretation given in Young v. Downey, supra, be applied to the words "for three successive weeks . . . prior to the day fixed for the election," they are in apparent contradiction with the words "three insertions" which are likewise used. The question for us to decide is, what was the legislative intent? "In the consideration of conflicting provisions in a statute the great object to be kept in view is to ascertain the legislative intent, and all particular rules for the construction of such provisions must be regarded as subservient to this end." [36 Cyc., p. 1130, quoted with approval in State ex rel. St. Louis Pub. Service Co. v. Public Service Comm., 326 Mo. 1169, 1176, 34 S. W. (2d) 486; 25 R. C. L., sec. 216, p. 961, sec. 237, p. 994.]

■ According to Webster's New International Dictionary a parenthetical word, phrase or sentence is a comment or explanation. In this instance the clause "for three consecutive weeks" immediate-

ly preceding the clause "three insertions" is so plain as to require no explanation. In State v. Brown, 130 Mo. App. 214, 109 S. W. 99, decided in 1908, the St. Louis Court of Appeals held that publication of notice in a weekly newspaper "for four consecutive weeks" under the above-mentioned local option law meant no more than four insertions, and it does not appear that the Supreme Court ever held otherwise. In framing the statute now under consideration in 1919 the General Assembly must be presumed to have had this meaning in mind. [State ex rel. Sears, Roebuck & Co. v. Haid, 60 S. W. (2d) 41, 43, 332 Mo. 701.] If notice of full twenty-one days by newspaper "advertisement for three consecutive weeks" was intended, this meaning was clear and complete without the additional words "three insertions" and such addition was meaningless. But, "the Legislature will not be presumed to have intended using superfluous or meaningless words in a statute." [Dodd v. Independence Stove & Furnace Co., 51 S. W. (2d) 114, 118, 330 Mo. 662.] The words "three insertions" must, therefore, have been added for the purpose of qualifying the preceding language. Seeing that the words "for three consecutive weeks" would absolutely require a newspaper publication of the notice for the full period of twenty-one days and not intending that such should be the absolute requirement, the Legislature added the qualifying words, "three insertions," so that if the notice be published the requisite number of times in each of three successive weeks, which appears to have been done in this case, such publication would be a sufficient compliance with the requirement intended to be made. If the latter clause in the statute is to be given any meaning at all, and undoubtedly it should, such seems to have been the legislative intent. [Alexander v. Messervey (S. C.), 14 S. E. 854, 855.]

Counsel for respondent suggest that inasmuch as the Act of 1919 was enacted in lieu of the repealed Act of 1913 (Laws 1913, p. 125, sec. 9), which provided for "at least twenty days' notice" whether given by newspaper or handbill publication, it will be presumed that the Legislature intended that the length of publication, whether by newspaper or handbills, should be the same, and that twenty-one days being specifically required by the latter method it was the intention of the Legislature to require the same length of time by the former. This conclusion seems unwarranted. If the same number of days was intended to be required the time by each method of publication would doubtless have been designated in days as was done in the Act of 1913. But such was not done. In the Act of 1919 the period for publication by newspaper was designated by weeks and insertions. Nor is it unusual, even in the same statute, for one form of publication to differ from another as to duration. Witness the statute construed in Young v. Downey, supra.

Upon the record presented here it appears that publication of the notice was sufficient in point of time to comply with Section 2906, Revised Statutes 1929. Therefore, it is ordered that our peremptory writ of mandamus issue. All concur, except *Leedy, J.*, absent.