In the Matter of Jeannette E. Wigand, Old Age Assistance Claimant.

Jeannette E. WIGAND, Appellant,

v.

STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE of Missouri, Respondent.

No. 33559.

St. Louis Court of Appeals, Missouri.

May 26, 1970.

John V. LaBarge, Jr., Kirkwood, for appellant.

Elmore G. Crowe, Edward D. Summers, Curtis J. Quimby, Dept. of Public Health and Welfare, Jefferson City, for respondent.

WEIER, Commissioner.

From a judgment of the Circuit Court of the City of St. Louis affirming the action of the Director of Public Health and Welfare which removed Jeannette Wigand from the old age assistance rolls, Mrs. Wigand has appealed. We affirm the judgment of the lower court.

Mrs. Wigand, a widow, was 78 years old and a resident of St. Louis, Missouri. She and her husband had owned and operated a small store. But after he became ill, they sold the store and had spent the money gained from the sale for medical and living expenses during the seven years of his illness. After her husband died, July 24, 1963, she cashed a United States Savings bond which they had saved and bought two $500.00 time certificates of deposit at American National Bank. These certificates were placed by Mrs. Wigand in her name and the name of her deceased husband's sister, Matilda Mae Sorrells. In form, they were issued: Jeannette Wigand "or" Matilda Mae Sorrells. Both certificates were kept in a safe deposit box rented to Murrel E. Sorrells and his wife, Matilda, with no right of access by Mrs. Wigand. When asked as to her intentions

concerning the placing of Mrs. Sorrell's name on the certificates, Mrs. Wigand said this was done so that if either one died the survivor would become the owner. According to Mrs. Wigand, one certificate was intended to be the property of Mr. and Mrs. Sorrells to repay them for money advanced even though it was placed in the names of Mrs. Wigand and Mrs. Sorrells. Interest from both certificates was paid to Mrs. Wigand.

Mr. Sorrells and his wife had advanced money from time to time to Mr. and Mrs. Wigand, but had never kept a record. He had taken Mr. Wigand to a clinic weekly but no charge was made for this service.

On May 1, 1968, the St. Louis City Welfare Office denied further Old Age Assistance to Mrs. Wigand and closed her file on the basis that she had resources in excess of $749.99, the statutory maximum of cash and securities. At that time her caseworker considered as resources the two certificates of deposit at $500.00 each, a checking account at the American National Bank also in the names of Jeannette Wigand or Matilda Mae Sorrells in the sum of $189.98 and the cash surrender value of a $500.00 insurance policy issued by John Hancock Mutual Life Insurance Company on the life of Mrs. Wigand which amounted to $380.20.

Mrs. Wigand applied for a hearing to appeal from the decision terminating her benefits. On July 23, 1968, this hearing was held before a referee appointed by the Director of the State Department of Public Health and Welfare of Missouri. At this hearing it appeared that Mrs. Wigand had cashed one of the certificates of deposit and had remaining at that time $200.00 from the proceeds. The other certificate, which she maintained had been given her former sister-in-law in payment of debt, was intact and still in the safe deposit box of Mr. and Mrs. Sorrells. The bank account had a balance of $137.06. No part

of the cash surrender value of the insurance policy had been withdrawn.

On September 18, 1968, the director in his finding of facts determined that the testimony concerning advancements to claimant by Mr. Sorrells and the subsequent delivery of the $500.00 certificate to Mrs. Sorrells in payment of such debts was vague and not convincing. The director in support of his findings pointed out that Mrs. Wigand had declared she owed no debts in eligibility statements given the department in 1961 and 1963 and which were in evidence. He determined she owned the two certificates, one of which she had cashed and spent $300.00. He also determined that she owned the insurance policy with $380.00 cash surrender value. Based on such findings of fact the director decided that under the provisions of Section 208.010 RSMo 1959, V.A.M.S.,[1] the claimant had resources and was not in need. Assistance was denied.

Upon appeal, Mrs. Wigand contends that the court below erred in affirming the findings of the director because she did not receive a fair hearing in two respects. We will take them up in the order presented.

First, she charges that the director failed to follow the eligibility standards of Section 208.010(2) [3, 4] which allow an Old Age Assistance recipient to own certain property within prescribed limits, but rather the director applied a standard inconsistent with the statute and which would require the claimant to have no resources to be eligible. A review of the statutes concerning Old Age Assistance in effect at the time of this dispute is essential to understand the issue.

Section 208.030 affirmatively grants old age assistance to one 65 years of age or older who is incapacitated from earning a livelihood and who has "not sufficient income or other resources, as described in Section 208.010, to provide a reasonable subsistence compatible with decency and

---

1. All section numbers hereafter used refer to RSMo 1959, V.A.M.S., unless otherwise indicated.

health, and is without adequate means of support, * * *."

Section, 208.010. provides that in determining the eligibility of a claimant, it is the duty of the division of welfare to consider and take into account all facts and circumstances surrounding the claimant, including, among other things, "resources", and if from all these facts and circumstances he "is not found to be in need, assistance shall be denied." The statute then goes on to set up certain specific limitations on eligibility in subsection 2. This portion as it was written at the time of the hearing, read, so far as pertinent, as follows:

"2. Benefits shall not be payable to any claimant who:

* * *

(3) Owns or possesses cash or securities in the sum of seven hundred fifty dollars or more; * * *

(4) Owns or possesses property of any kind or character, or has an interest in property, of which he is the record or beneficial owner, the value of such property, as determined by the division of welfare, less encumbrances of record, exceeds seven thousand five hundred dollars, * * *."

Before the hearing began to determine Mrs. Wigand's eligibility, the referee indicated that the only issue was whether or not she had resources in excess of the maximum set by statute. The director found that she owned resources and was not "in need" as defined by law. This issue as to resources has been acquiesced in by claimant on appeal.

As is stated in Wallin v. State Department of Public Health and Welfare, Mo., 422 S.W.2d 345, 347[1–3], our review of this case is on the record of the hearing before the director. Only if the decision of the director is not based on substantial evidence can his findings of fact and the order based thereon be characterized as arbitrary or unreasonable, and thereby subject to reversal. This is not a review of the record de novo and an independent determination of the issues. Rather we consider the evidence most favorable to the decision of the director to determine whether there is substantial evidence to support it. And in such consideration we must bear in mind that the claimant has the burden of proving her eligibility. The director, rather than the court below, or this court, passes upon the credibility of witnesses. He may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony given in support of the claim.

Eligibility shall be determined "upon the record so made" (Section 208.-080[3]) and this means the facts as they exist at the time of hearing before the referee, and not limited to those facts existing when the caseworker closed the file. Collins v. Division of Welfare of the State of Missouri, Mo. (en banc), 364 Mo. 1032, 270 S.W.2d 817, 819 [3]. Since there was a diminution of resources between the caseworker's determination and those in existence at the time of hearing we will test the validity of appellant's contentions in light of those found by the director to be in existence at the time of the hearing on July 23, 1968.

At that time the director found claimant was the owner of one $500.00 time certificate, that she had cashed the other and had spent $300.00, thus leaving $200.00 from its proceeds. Included in the finding was the cash surrender value of the life insurance policy of $380.00. In addition, claimant's testimony revealed $137.-00 in her checking account. These items totaled $1217.00 and according to the Department of Public Health and Welfare these were resources which exceed the limitation of Section 208.010(2) [3], supra, of $749.99. Claimant asserts that the director made findings contrary to the evidence and the law in determining that Mrs. Wigand did not borrow money from Mrs. Sorrells. But the director is not obliged to believe

any witness, even though uncontradicted and unimpeached, (Wallin v. State Department of Public Health and Welfare, supra), and the director chose not to believe the witnesses who vaguely testified to such an obligation which she had previously denied in 1961 and 1963.

Mrs. Wigand then contends that she was not the sole owner of the two time certificates for two alternate reasons: first, on the basis of the theory that she was a joint tenant in the certificates and hence had only an undivided one-half interest; or second, on the basis that one certificate had been placed in the possession and control of Mrs. Sorrells and so deprived herself of joint ownership therein. With respect to the first, the evidence is not clear that Mrs. Wigand intended, or that the certificates were actually placed in joint tenancy. The word "or" between the two names has no significance under Section 362.470 to establish a joint account with right of survivorship. This section gives no special significance to the use of this word on a bank account or certificate of deposit. It may be taken with other evidence even of a parol nature to show intent and such an account can be held to be a joint account with all the incidents of joint tenancy even though the word "or", standing alone, will not be construed to have any legal significance. It is the intent of the parties that will govern. Melton v. Ensley, Mo.App., 421 S.W.2d 44. From the facts before us in this case which merely show the certificates to have been issued in the names "Jeannette Wigand or Matilda Mae Sorrells", there is no presumption of joint tenancy. When we try to find whether the director could have found intent to create such a tenancy from the testimony of witnesses, we find there is some indication that Mrs. Wigand wanted the certificates to be in such form of ownership. She said that if she died, Mrs. Sorrells was to get her certificate and if Mrs. Sorrells died, she, Mrs. Wigand, would become the owner of the other certificate, and certainly the right of the survivor to take all is one of the attributes of a joint tenancy. On the other hand, she was very emphatic in stating that one of the certificates belonged to her and the other to Mrs. Sorrells, which clearly shows she did not intend to create a joint tenancy wherein both would jointly own each of the certificates. The alternate theory of absolute transfer of the $500.00 certificate to Mrs. Sorrells does not hold up under close scrutiny. As previously pointed out, the director found that there was not sufficient believable evidence to support the claim of indebtedness with resultant payment of the debt by delivery of the certificate. There is no claim that it was transferred to Mrs. Sorrells for a valuable consideration other than the payment of the claimed debt. There was also no contention that the certificate remaining at the time of hearing had been a gift to Mrs. Sorrells. Such a contention, if successfully asserted and proven, would have disqualified Mrs. Wigand from receiving assistance under Section 208.010(2) [1] which prevents the assignment of personal property of any value within five years preceding the investigation as to eligibility without a fair and valuable consideration.

We now turn to the contention of Mrs. Wigand that the cash surrender value of her insurance policy should not be included as part of the assets which disqualified her. Claimant reasons that the only way the director could have disqualified her was to include the cash surrender value of her insurance policy as a part of the "cash or securities" described in Section 208.010(2) [3], thereby causing this classification of resources to exceed the limit of $749.99. But, so she asserts, the cash surrender value of an insurance policy is neither "cash" nor a "security" as mentioned in this subsection and therefore she reasons that it falls within the classification of "property of any kind or character" on which there was then a limit of seventy-five hundred dollars. Section 208.010(2) [4], supra. Simple arithmetic reveals that her "cash or securities" at the time of

hearing, exclusive of the insurance policy, exceeded $749.99. The certificate of deposit at $500.00; the $200.00 left from the certificates which she had redeemed; and the checking account of $137.00 total $837.00. Assuming, however, that the director would have to include the value of the policy before arriving at his decision, we see no reason to declare such an asset to be outside the definition of "cash or securities". The fact remained that at any time she could have converted her insurance policy into $380.00. It had a cash surrender value of that amount.

 Black's Law Dictionary defines "Securities" as "Evidences of debts or of property. Evidences of obligations to pay money or of rights to participate in earnings and distribution of corporate, trust, and other property." Webster's Third New International Dictionary defines "Security" as "a written obligation, evidence, or document of ownership or creditorship (as a stock, bond, note, debenture, or certificate) giving the holder the right to demand and receive property not in his possession * * *." This last definition received the approval of the court in First National Bank of Kansas City v. Hyde, Mo., 363 S.W.2d 647, 653[11]. Both are broad in their language and would include any document setting forth an obligation to pay money such as an insurance policy wherein the company agreed to pay a certain sum of money to the policyholder upon surrender of the policy. The cardinal rule of construction of a statute is to ascertain the lawmaker's intent from the words used, if possible, and to put upon the language, honestly and faithfully, its plain and rational meaning. Bussmann Mfg. Co. v. Industrial Commission of Missouri, Mo. App., 327 S.W.2d 487, 490[1]. Plain and rational meaning would include an insurance policy with a cash surrender value as a "security" under the meaning of Section 208.010. Furthermore, prior to the revision of Section 208.010 upon which claimant's eligibility is based, the same section (then Section 9406, RSMo 1939) limited

claimants to ownership or possession of "cash or *negotiable* security" up to the sum of $500.00. Miller v. State Social Security Commission, 235 Mo.App. 963, 151 S.W.2d 457, 459[4], cited in claimant's brief, correctly held that although a life insurance policy could be cashed or put up and pledged as security, or assigned, it was not "negotiable" within the commonly accepted meaning of that word. Hence it was not a "negotiable security". But here the statute as changed eliminated the word "negotiable". We believe the legislature meant something by that elimination. A statute as amended should be construed on the theory that the lawmaker intended to accomplish something by the amendment (State v. Chadeayne, Mo., 323 S.W.2d 680, 684[2]) and that the legislature had in mind the construction placed upon it by the appellate courts of the state prior to the amendment. State ex rel. Kelsey v. Smith, 335 Mo. 1125, 75 S.W.2d 832, 834[3].

Reference is made in claimant's brief to the exclusion of a life insurance policy from the definition of "security" in Section 409.401(1), Laws 1967, (Missouri Uniform Securities Act). This definition section specifically limits the definitions of certain terms as set out therein "[w]hen used in this act." Obviously the act was passed for the purpose of regulating certain types of securities described therein. It did not apply to life insurance contracts which are regulated in other chapters of the statutes. (See Chapters 374 through 376). The doctrine of in pari materia is not applicable. State ex rel. Moore v. Weathers, Mo.App., 396 S.W.2d 746, 749[2].

We observe that this problem of the inclusion of cash surrender value will probably not arise too often hereafter since Section 208.010 has been amended (Laws 1969, H.B. No. 804, Sec. 1) to eliminate as a resource of a claimant any insurance policy paying upon death one thousand dollars or less.

 Finally, Mrs. Wigand contends that she did not receive a fair hearing be-

cause the referee performed the conflicting duties at the hearing of deciding questions of law, determining issues of fact and acting as advocate on behalf of the Department of Public Health and Welfare. No point is here made that any of the rulings of the referee on the reception of evidence were in error or that he displayed a manifest bias toward claimant prejudging the controversy and intimidating, disparaging, and discrediting witnesses as in Jones v. State Department of Public Health and Welfare, Mo.App., 354 S.W.2d 37. Rather, the complaint is limited to the referee performing conflicting roles without specifying how or in what respect claimant did not receive a fair hearing. Claimant was present and was represented by counsel. All that she presented in the way of evidence was received. No error is claimed on appeal as to any rulings of the referee. The referee evidenced no hostility to claimant. The director, rather than the referee, made the decision to deny assistance and this was based upon all the evidence submitted at the time of hearing without any recommendation from the referee. Such a presentation and reception of evidence has been held by this court to constitute a fair hearing. Bollinger v. State Department of Public Health and Welfare, Mo.App., 254 S.W.2d 257, 259[4]. See also Garrard v. State Department of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 587[11].

▮ The judgment of the circuit court affirming the decision of the director of the State Department of Public Health and Welfare is affirmed.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment of the circuit court affirming the decision of the director of the State Department of Public Health and Welfare is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.