Montana CRUDUP, Appellant,

v.

**MISSOURI STATE DIVISION OF FAMILY SERVICES, Respondent.**

No. KCD 29984.

Missouri Court of Appeals,
Western District.

May 5, 1980.

Effie F. Day, Legal Aid of Western Missouri, James M. Smith, Kansas City, for appellant.

Robert R. Northcutt, Division of Family Services, Paul T. Keller, Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The appeal comes from a judgment of the circuit court to affirm the decision of the Director of the Division of Family Services to deny the claim of Crudup for medical assistance benefits.[1] The refusal rests on the determination that Crudup was not permanently and totally disabled. The appeal contends the decision was not upon competent and substantial evidence and that the

---

1. The recitation prefatory to the judgment of the circuit court on review describes the claim period as between June, 1975, and August, 1976. We reckon the period of the claim as from August 20, 1975, to August 30, 1976. Crudup made two successive claims for medical assistance. The first application was on June 21, 1975, and finally denied on August 19, 1975. This claim lapsed for want of request for judicial review. The second application was made on August 20, 1975, the day after final denial of the first. Then, on August 30, 1976, the Director finally approved the claimant for medical assistance benefits.

procedure used denied the claimant a fair hearing.

The claim was for medical assistance for the treatment of a permanent disability. The fund for such a benefit derives from both state and federal sources. § 208.170, RSMO 1978. The assistance Crudup claims is a species of state welfare [§ 208.151(3), RSMO 1978] and of federal aid under Title XIX of the Social Security Act [42 U.S.C. § 301 et seq.]. The federal Act requires that a participant state shall provide medical assistance to any disabled person eligible for such benefit under any plan in effect in that state on January 1, 1972. The medical eligibility standard in effect on that date for a person permanently and totally disabled was that enacted by § 208.051 [since repealed by Laws 1973] by the definition:

[A person] [w]ho is *disabled* by illness, injury, or other *physical or mental impairment* which is medically determinable and *can be expected to be of long-continued and indefinite duration* or to result in death. [emphasis added]

The promulgated agency regulation [13 C.S.R. § 40–2.100] defines permanent and total disability to mean that the person

has some *physical or mental impairment, disease, or loss from which recovery or substantial improvement cannot be expected, and which substantially precludes him from engaging in any occupation within his competence, such as holding a job or homemaking.* [emphasis added]

The essential statutory standard for medical assistance eligibility was given effect by formal Regulation No. 95 of the Division of Family Services [13 C.S.R. § 40–2.100]. The ostensible ground for the decision of the Director to deny benefits was that the evidence did not prove a total and permanent disability under the definition of Regulation No. 95:

Permanent and total disability means that the individual has some physical or mental impairment, disease, or loss from

which recovery or substantial improvement cannot be expected, and which substantially precludes him from engaging in any occupation within his competence, such as holding a job or homemaking. That definition of regulation is further refined by the provision of the Income Maintenance Manual of the Division of Family Services that to qualify for medical assistance benefits, the disability impairment "must be of major importance and must be a condition not likely to improve or which will continue for at least 12 months."

The implicit ground for decision [acknowledged by the Director on appeal] was, simply, that the medical evidence did not prove disability would continue for at least twelve months. That such was the policy for eligibility actually enforced by the Division emerges from the testimony of the social workers, medical review teams and other official personnel. The claimant Crudup contends that the Income Maintenance Manual provision which equates eligibility for medical benefits with a forecast of continuous disability for at least twelve months conflicts with the statute and agency regulation definitions of the *permanent and total disability* qualification. We note that the Income Maintenance Manual was not in evidence and was of no effect either as an authoritative definition or expression of agency policy. · Nor was the substance of the Manual a regulation of the agency, duly promulgated and published as a component of the code of state regulations, which the court was bound to notice even in the absence of proof. § 536.031.5, RSMo 1978; *State v. Crowell*, 560 S.W.2d 889, 891 [4, 5] (Mo.App.1978).

 Our decision need not determine whether the agency *policy* that a medical assistance claimant show a continuous disability for more than twelve months contradicts the permanent disability standard for eligibility. Rather, we assume the validity of the agency *policy*[2]—on which the admin-

---

**2.** We are not aware of any authoritative appellate interpretation of the Regulation No. 95 [13 C.S.R. § 40–2.100] definition of total and permanent disability for medical assistance bene-

fits. In such case, the effect the agency accords the administrative promulgation assists the court of review. *State ex rel. Danforth v. Riley*, 499 S.W.2d 40, 44 [6] (Mo.App.1973).

istrative decision is acknowledged to rest—to conclude that the Director exacted a greater proof by the claimant than the *policy* requires. The provision of the Income Maintenance Manual—[the administrative *policy* on which decision rests]—for medical assistance eligibility expects only that a claimant prove that the impairment "be a condition not likely to improve or which will continue for at least 12 months."[3] The proof imposed, however, was not of a *disability actually continuous* for more than twelve months—as the policy literally charges—but of a *disability medically predictable* for that period. Thus, although the claimant gave evidence of a concatenated series of disabilities continued for almost two years, Crudup was denied benefit because there was no medical forecast of such a period of disability.

The claim period in contention was from August of 1975 to August of 1976. The first application for medical assistance benefits was made in June of 1975 and denied by administrative appeal decision in August of 1975. The rejection of claim was based on the administrative medical review team [a social worker and a physician] decision that the estimate of the *then* attending physician was that the disability would endure for only six to eight weeks—and thus for a less period than a continuous twelve months. At the time of that decision, the record before the administrative officer showed this chronology of disability:

| DATE | CONDITION | PHYSICIAN | DISABILITY PROGNOSIS |
|---|---|---|---|
| 4–74 | Chest Pain Pericarditis | Anthony | 3 months |
| 8–74 | Hospital surgery Fistulectomy | Diez | Reevaluation after 1 month |
| 9–74 | Heart Disease | [Vocational Rehabilitation] | Referred to General Hospital |
| 10–74 | Recurrent perianal abscess | Johns | Reevaluation after 2 months |
| 11–74 | Pericarditis Fistulectomy performed | Connor | 1 month |
| 12–74 | Rectal surgery Chest pains | Connor | 8 weeks |
| 1–75 | Interned for Pneumonia | None shown | Released after 3 days |
| 2–75 | Diffuse lung disease, anal fistula, abscessed syphilis, treated | Butterworth | 3 to 6 months (chemotherapy for lungs for 2 more years] |
| 3–75 | Incision of perirectal abscess | Howard | No notation |
| 4–75 | Hypertensive cardiovascular disease, arteriosclerotic heart disease, pulmonary fibrosis, rectal disorder | Calovich | The disability depended upon how soon the rectal difficulty was resolved. |
| 4–75 | Perianal abscess surgery | Howard | No notation |
| 5–75 | Perianal abscess surgery | Petit | No notation except: "Final Diagnosis—Rectal fistula, recurrent." |

3. The full provision of the Manual recites that "the impairment must be of major importance and must be a condition not likely to improve or which will continue for at least 12 months." The proceedings give no intimation that the rejection of benefits was for any reason other than the lack of proof of a condition medically predictable to continue for at least twelve months. The record supports the implicit determination that the disability proved was "of major importance."

| DATE | CONDITION | PHYSICIAN | DISABILITY PROGNOSIS |
|---|---|---|---|
| 6–75 | Examination: "Rectal fistula, slowly healing; Prostatitis; Inguinal hernia [to be repaired when anal area has completely healed.]" | Petit | 6 to 8 weeks |

Thus, at the exact time of the hearing on the first claim application in June of 1975, there was evidence before the agency of an unremitted sequence of disability, each episode forecast for less than a full twelve months, but an actual disability continuous beyond the prescription. That succession of disability remained intact even through the rejection of claim by administrative appeal on August 19, 1975, and the second claim application on the very next day. That is to say, there was evidence that as currently as August 18, 1975, Dr. Petit found Crudup "totally disabled for work for two months" —and as late as November 29, 1975, Dr. Pemberton found claimant Crudup "able to work again in three to six months," unless a perirectal abscess condition recurred.

The entire record shows only one contradictory medical estimate: the opinion given by Dr. Johns in June of 1974 that the claimant was without disability and his dismissal from medical concern with the direction: "Put him to work." That same physician four months later [October of 1974], however, diagnosed a recurrent perianal abscess and ordered a reevaluation in two months. The only other evidence discordant to the claim of a continuous disability was the report of Dr. Calovich in April of 1975 which, after diagnosis of pulmonary fibrosis, coronary heart disease, back arthritis and anal ulcer, suggested Crudup fit for only light work until "his rectal problem is cleared up." This testimony was part of the full context of evidence that Crudup suffered from chronic anal abscess for which he was treated surgically seven times within the preceding months, a condition which incapacitated him from work as a truck driver, and a condition subsistent at the time of the refusal of the claim.[4]

We do not determine the evidence. The validity of the medical opinions as estimates of disability remains for the Director. § 208.080.3, RSMo 1978; *Wigand v. State Department of Public Health & Welfare*, 454 S.W.2d 951, 954 [1–4] (Mo.App.1970). We do say, however, that an agency is bound to conform decision to its own interpretation of a promulgated rule given effect as *policy*—in this case, that disability continue for at least twelve months to be permanent, and hence eligible for medical assistance. The decision of the Director to refuse benefit because the medical evidence did not predict a continuous disability beyond twelve months—evidence of an actually continuous disability notwithstanding—demands a burden of proof on the claimant more onerous than the administrative interpretation of the regulation imposes. The decision of the Director was arbitrary and denied the claimant a fair hearing. § 208.-100.5, RSMo 1978.

Accordingly, the judgment is reversed with directions that the circuit court remand the proceedings to the Director for redetermination.

All concur.

---

4. The claimant previously qualified for general relief and received those benefits at the time of his claim applications for medical assistance. General relief, according to agency practice, was available for a "temporary disability"—[by agency policy?] an incapacity of at least a two-months' duration. The medical assistance, on the other hand, required a disability of more than twelve months.