**In re ESTATE of J. Roger DeWITT et al., Appellants,**

v.

**STATE of Missouri, Respondent.**

**No. 61189.**

Supreme Court of Missouri, En Banc.

Sept. 9, 1980.

Rufus Burrus, W. Raleigh Gough, Independence, for appellants.

John Ashcroft, Atty. Gen., Richard Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Commissioner.

This is an appeal from the judgment of the Circuit Court of Jackson County affirming an order of the Probate Court assessing inheritance tax in the estate of J. Roger DeWitt, a resident of Jackson County who died on November 20, 1968.

The will of Mr. DeWitt divided his estate into two trusts, a "marital trust" and a

"residuary trust." Under the "marital trust" his widow, Mary M. DeWitt (the executrix), was given a life estate beneficial interest in that proportion of his entire estate which, with other provisions for his wife by will or otherwise, would constitute one–half of his entire estate for federal estate tax purposes. In addition, the will provided that upon his wife's death, the trustee should pay over and distribute the principal of the trust, with all undistributed net income "to or for the benefit of such person or persons or corporation or corporations, or the estate of my wife, in such amounts or proportions, and in such lawful interests or estates, whether absolute or in trust, as my said wife may appoint by her last will and testament." The will further provided that, if for any reason such power of appointment is not effectively exercised by his wife, such estate shall be added to his "residuary" estate and distributed according to Article V of his will.

The will provided in Article V that all the income from the "residuary" trust be paid to his wife as long as she lives; upon her death all such income be paid to his brother, Robert A. DeWitt, for his life; and upon the death of his brother the principal and all undistributed income be paid and distributed to numerous charitable institutions and individuals including the "Ruby E. Simmons Trust," the "DeWitt Family Trust," and a "Cemetery Maintenance Fund."

Article XI of the will provided for invasions of principal to be made; first from the "marital trust" estate, or if that is not sufficient, then out of the "residuary trust" estate. The power to invade is limited to sums in the discretion of the trustee for the wife's care, comfort, and maintenance considering her previous standard of living.[1]

The inheritance tax report listed total assets of the estate of $1,764,040.62, deductions of $332,859.04, and a net estate of $1,431,181.68. Of this amount, the sum of $1,005,946.76 was assessed as the value of the widow's interest, and after the allow-

ance of exemptions a tax of $5,900.57 was assessed against the net amount thereof. This amount of the widow's taxable interest was arrived at by adding the *full* amount of the "marital trust" estate to the *appraised* value of the widow's life estate in the "residuary trust" estate, and adding thereto the value of a club membership in the amount of $600.00.

The report further found that the "residuary trust" estate would not be sufficient to pay all the bequests enumerated under Article V of the will. Therefore, the appraiser computed the inheritance tax on the basis that each of the beneficiaries of specific bequests would receive an "abated amount," or approximately 64% of the amounts named in the will. On the basis of that finding, the appraiser concluded that there would be nothing left for the ultimate residuary bequest to the City of Independence for a community building to be known as "DeWitt Memorial Hall."

Section 145.020 (all statutory references are to RSMo 1978) provides in part as follows:

1. A tax is·hereby imposed upon the transfer of any property real, personal, or mixed, or any interest therein or income therefrom in trust or otherwise, to persons, institutions, associations or corporations, not herein exempted, in the following cases:

(1) When the transfer, by will or the intestate laws, is from any person who is a resident of this state at the time of his death.

\*     \*     \*     \*     \*     \*

2. Such tax shall be imposed when any person, association, institution or corporation actually comes into the possession and enjoyment of the property, interest therein or income therefrom.

\*     \*     \*     \*     \*     \*

Section 145.010 defines the word "transfer" to "include the passing of property or any interest therein, in possession or enjoy-

---

1. In its determination of the inheritance tax the Probate Court did not rely on this provision of the will, apparently acknowledging that the

right to invade was not "unlimited." On this appeal there is no attempt to sustain the tax by reason of this provision.

ment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift *or appointment in the manner herein described.*" (Emphasis added.)

Appellant maintains that the only "property" she received from the marital trust which is subject to an inheritance tax is the right to income for life, and not the corpus of the trust. The position of the State, as stated in its brief, is that "The power of appointment permits the holder of the power to exercise dominion and control in respect to inheritance over the property subject to the power. Consequently, a power of appointment constitutes an interest in property."[2]

The State cites *In re Costello's Estate*, 388 Mo. 673, 92 S.W.2d 723 (banc 1936), and *In re Tompkins' Estate*, 341 S.W.2d 866 (Mo.1960). The *Costello* case does not involve a power of appointment. In that case two sisters of the testator were equal residuary legatees, and before any distribution had been made one of the sisters died leaving a will in which she named her two daughters as legatees. The assessment of an inheritance tax on the share the deceased sister received from her brother was challenged on the basis that she had died before she came into the possession or enjoyment of any property, interest therein, or income therefrom. It was held that the term "enjoyment" as used in the inheri-

tance tax statutes means "control," and that she "actually came into enjoyment of the property" because she acquired a vested interest in her share subject only to lawful charges; she shared in any income from the property; and "Furthermore, she enjoyed the privilege of transferring the property by will to her daughters." In the *Tompkins* case a trust was created by will whereby Mrs. Tompkins received the income therefrom for her life with the power of appointment at her death by will. The executrix of the estate of Mrs. Tompkins challenged the assessment of inheritance tax on the property covered by the power of appointment. It was held that by reason of the wording of § 145.030 an inheritance tax "was properly assessed in the estate of the one exercising the power."[3] Neither of these cases expressly ruled the precise issue here.

It has been held that the power to dispose of property at death is the equivalent of ownership for estate and inheritance tax purposes. *Estate of Mueller*, 47 Wis.2d 336, 177 N.W.2d 60, 63 (1970); *Graves v. Schmidlapp*, 315 U.S. 657, 62 S.Ct. 870, 86 L.Ed. 1097 (1942); *Matter of Estate of Ward*, 168 Mont. 396, 543 P.2d 382 (1975); 42 Am.Jur.2d Inheritance, Estate, and Gift Taxes § 135. Therefore, if § 145.010 and § 145.020 were all that there were pertaining to the imposition of an inheritance tax, it could reasonably be argued that the

---

2. In the order overruling the exceptions to the report of the Inheritance Tax appraiser it is stated that "the property subject to the power of appointment devised by J. Roger DeWitt is taxable to his widow at this time and that it is also taxable to the ultimate recipients thereof determinable, at the latest, at the time of his widow's death."

3. In his brief the Attorney General states that "an inheritance tax had been imposed on the entire estate at Mrs. deGiverville's [the grantor of the power of appointment] death." This needs further explanation. Mrs. deGiverville died in 1913. The present inheritance tax law was not enacted until 1917. At the time of the death of Mrs. deGiverville Missouri had a "Collateral Inheritance Tax." It provided for a tax on all property which passed by will "whereof any person * * * shall become beneficially entitled in possession or expectancy, to any

property *or the income thereof*," except when those who received it were certain statutorily described persons or "direct lineal descendant[s]" of the testator. Mrs. Tompkins, the grantee of the income from the trust and to whom was given the power of appointment was a niece who was not exempted from the imposition of the tax. She exercised the power of appointment by will and died in 1951. It was after the death of Mrs. deGiverville and the vesting of the power of appointment, but before the death of Mrs. Tompkins that what is now § 145.030 was enacted by the Legislature. The issue in the *Tompkins* case was whether § 145.030 imposed an inheritance tax at the time of the exercise of the power of appointment. There was no issue as to whether the present inheritance tax law would have imposed an inheritance tax on the corpus of the trust at the death of Mrs. deGiverville.

transfer to Mrs. DeWitt of the power to control the disposition of the property constituted a taxable "interest in property" within the meaning of § 145.020. However, all the statutory provisions pertaining to the imposition of an inheritance tax must be read together to carry out the legislative intent, and all provisions must be harmonized, if reasonably possible. *Sandbothe v. Williams*, 552 S.W.2d 251 (Mo.App.1977).

Section 145.030, must be read with § 145.010 and § 145.020, and in its pertinent parts, it reads as follows:

"Whenever any person or corporation shall exercise the power of appointment derived from any disposition of property * * * such appointment *when made* shall be deemed a *transfer taxable* under the provisions of this law in the same manner *as though* the property to which said appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by the donor[4] by will; * * *." (Emphasis added.)

In our construction of the provisions of the inheritance tax statutes we are to ascertain the intention of the Legislature as expressed by it, and give to the words employed their usual and ordinary meaning. *In re Tompkins' Estate*, supra; *In re Estate of Hough*, 457 S.W.2d 687 (Mo.1970). In doing so we should if at all possible avoid a construction which would result in redundant and superfluous provisions. *State ex rel. Kelsey v. Smith*, 335 Mo. 1125, 75 S.W.2d 832 (1934).

■ When read together we find that § 145.020 imposes a tax upon the *transfer* of property by will or the intestate laws. Section 145.010 defines the word transfer to include the "passing of property or any interest therein" by eleven different methods, one of which is by "appointment in the manner herein described." The common law rule was that an appointive estate is deemed to come from the donor of the power of appointment. *Naylor v. Brown*, 166 Conn. 581, 353 A.2d 709 (1974). But a state may, if it so desires, declare that "for the purpose of succession taxes, that the person executing the power shall be considered the source of the estate which is received by reason of the exercise of the power," *In re Robinson's Estate*, 192 Minn. 39, 42, 255 N.W. 486, 487 (1934), and Missouri has done so. *In re Tompkins' Estate*, supra at p. 872. By § 145.030 the legislature has specifically extracted one of the generally described methods of transferring property defined in § 145.010 and has provided that as to this one method, that is, a transfer by appointment, the exercise of the power of appointment "*when made shall be deemed a transfer taxable under the provisions of this law in the same manner as though the property* * * * *belonged absolutely*" to the person exercising the power, and as though the property "had been bequeathed or devised" by that person by will. The term "this law" refers to the inheritance tax law ; not just to § 145.030. Section 145.030 is a special provision applicable to a particular set of facts. It carves out of § 145.010 one of the generally described methods of making a taxable transfer and accords to it different treatment for tax purposes. The rule is that " 'Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same

---

4. It was held in *In re Tompkins' Estate*, supra at p. 871, that the word "donor" as here used refers to the donor of the appointive property under the power of appointment and that "the donee of such power" and the "donor by will" refer to the same person in different capacities. In the *Tompkins* case, supra, after reviewing the legislative history of § 145.030 it was held that "The words 'as though' are used to separate the first portion of the statute from the next two phrases, which as stated are intended as illustrative, and make reference '*as though*' something were true which isn't." What is assumed to be true by § 145.030, but is not, is that "the property to which said appointment relates *belonged absolutely to the donee of such power.*" The *Tompkins* case thus makes it clear that the property subject to the appointive authority does *not* become the property of the donee of the power of appointment, but for tax purposes it is to be treated *as though* it did. It was further held that "The first part of the section clearly states that the exercise of the *power of appointment shall be deemed a transfer* subject to the tax imposed."

subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view of giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them the special will prevail over the general statute.'" *State ex rel. McKittrick v. Carolene Products Co.*, 346 Mo. 1049, 144 S.W.2d 153, 156 (1940); *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968).

A somewhat comparable case is *In re Robinson's Estate*, supra at p. 486. There, at the death of the grantor of a power of appointment, a compromise was entered into concerning inheritance taxes, and in doing so consideration was given to a statutory provision providing that when property was transferred "in trust or otherwise, and the rights, interest or estates of the transferee [were] dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged * * *," the tax "shall be imposed upon said transfer at the highest rate which, on the happening of any of said contingencies or conditions, would be possible." The person receiving the power of appointment exercised it by will in favor of her husband. The Minnesota inheritance tax law provided that "Whenever any person or corporation shall exercise a power of appointment * * *, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." The State claimed an inheritance tax was due upon the succession to the husband as appointee. The tax was opposed on the basis that the compromise agreement as to the inheritance tax on the estate of the donor of the power "ended the whole matter and barred any further tax on the transfer." It was held that the specific provision pertaining to the treatment for tax purposes of the exercise of a power of appointment was "controlling within its limited field as against the general terms" of the statute pertaining to transfers in "trust or otherwise."

The general rule is expressed in 85 C.J.S. Taxation § 1148, as follows:

"In the absence of a statute providing to the contrary, the execution of a power of appointment is not to be regarded as a transfer by the donee of the power and taxable as such, whether the power is created by deed or by will, even though the appointed property is included in the estate of the donee for federal estate tax purposes.

"Where, however, a statute provides that, under a will giving a person a power of appointment, the appointee takes through or from the donee of the power, it is the exercise of the power of appointment and not the creation of that power, which effects the transfer that the statute makes taxable, regardless of any technical question as to the donee's title; only the practical transfer of the property through the exercise of the power is taxed, and the original transfer under which the power is created is not taxed."

When §§ 145.010, 145.020 and 145.030 are read together it is clear that the Legislature intended, as it said, that the transfer of property or an interest therein by way of appointment, as distinguished from the other enumerated methods of transfer, shall be "deemed a taxable transfer" of the corpus of the trust in the same manner "as though" the property so transferred "belonged absolutely" to the person exercising the power of appointment. By so providing, the Legislature stated, in effect, that as to this one method of transfer the taxable event was the exercise of the power of appointment and not the creation of that power. Therefore, in the determination of the widow's taxable interest it was error to include the full amount of the "marital trust."

Appellant also challenges the computation of the inheritance tax as to the "residuary trust." Some reiteration of the facts will be helpful. The widow of the testator was given a life estate in this trust, and the brother of the testator was given a succeeding life estate. The will provided that after

the death of the second life tenant, the trust estate is to be distributed to the designated legatees in specified amounts, totaling $421,000. After the payment of these specific legacies, the remainder of the property is to be paid to the City of Independence for the purpose of building a community service building to be known as the DeWitt Memorial Hall.

In its material parts, § 145.200 provides as follows:

"When any property, interest therein or income therefrom belonging to any estate in course of administration, shall pass or be limited for the life of another  *  *  *  the value of property at the date of death so passing shall be determined by appraisal for the purpose of taxes under this chapter immediately after the death of the decedent and the value of said life estate  *  *  *  shall be valued according to mortality tables, using the interest rate or income rate of five percent, and the value of the remainder in said property so limited shall be ascertained by deducting the value of the life estate  *  *  from the clear market value of the property so limited and the tax on the transfer of the separate estate or estates, remainder or remainders or interest shall be immediately due and payable, to the director of revenue together with interest thereon  *  *  *."

The parties agree that the taxable value of the "residuary trust" is $550,878.55, that the taxable value attributable to the widow's life estate is $179,613.94, and that the taxable value attributable to the successive life estate is $97,946.21. The total of these two values is $277,560.15, and when this value of the two life estates is deducted "from the clear market value of the property so limited" (the value of the corpus of the trust) there remains $273,318.40 as the value to be used in determining the tax attributable to each bequest.

In this case the appraiser totaled the specific bequests to be paid from the corpus of the trust at the termination of the second life estate ($421,000), and because that amount exceeded $273,318.40, which he in-

correctly described as the "Balance in residuary trust," he concluded that no amount would be remaining for the nonspecific remainder interest bequeathed to the City of Independence. However, this was an erroneous conclusion on the part of the appraiser. The corpus of the trust remaining for distribution was not reduced by $277,560.15. That figure represents the statutorily defined value of the two life estates to be used for the computation of the inheritance tax. Therefore, the appraiser improperly reduced for tax assessment purposes the interest as stated in the will of each of the specific legatees, and he improperly applied to that reduced interest the applicable rate for each of the beneficiaries. His improper action resulted in an increased tax to the beneficiaries subject to tax because no portion of the remaining taxable value of the estate was attributed to the charitable gift to the City of Independence.

We make these two observations. First, the property in the trust fund or its value was not diminished or reduced, and it is incorrect to say that after deducting the taxable value of the two life estates from the taxable value of the corpus of the trust that there would not, for that reason, be sufficient money or property remaining to pay the bequest to the City of Independence. Second, the method of computation used by the tax appraiser could lead to absurd results. Assume, for example, that there was a large *specific* bequest to a charity, and the *residuary* bequest was made to an individual who would be subject to pay an inheritance tax. Under the method employed, the individual would receive the bequest to him free from any inheritance tax, a result obviously not intended by the Legislature.

We consider the directions of the Legislature as to the method of computing the tax to be reasonably clear. When there is property in an estate which is "limited for the life of another" the value "at the date of [the testator's] death" of the property so passing shall be determined by appraisal for the purpose of inheritance taxes. This was done in this case, and the appraised value

was $550,878.55. Then "the value of the said life estate * * * shall be valued according to mortality tables, using the interest rate or income rate of five percent." This also was done in this case, and the parties agree that the taxable value of the widow's life estate is $179,613.94, and that the taxable value of the successive life estate is $97,946.21, or a total taxable value of $277,560.15. Section 145.200 then provides that "the value [for inheritance tax purposes] of the remainder of said property so limited shall be ascertained by deducting the value of the life estate [or estates] * * from the clear market value of the property so limited" (Emphasis added). This was done and that taxable value was determined to be $273,318.40. It is then provided that based on these values so determined "the [inheritance] tax on the transfer of the separate estate or estates, remainder or remainders or interest shall be immediately due and payable." This means that the inheritance tax attributable to each beneficiary must be calculated on the value so determined immediately following the death of the testator. Therefore the tax is not computed on the amount actually to be received at a later time, but according to the statutory formula.

■ In this case the inheritance tax attributable to the "residuary trust" is to be computed on a total taxable value of $550,878.55. That total value is to be allocated between the life estates, the specific bequests, and the residuary bequest. The sum of the values used to compute the tax as to these three groups cannot exceed the taxable value of the entire trust. The taxable value of life estates is to be determined as specified in § 145.200, and the total taxable value of the specific individual bequests and the residuary bequest must equal the total taxable value remaining after deducting the taxable value of the life estates from the taxable value of the "residuary trust."

The total amount of the specific bequests ($421,000) is 76.42% of $550,878.55. Therefore, the percentage of the taxable value of $273,318.40 (the taxable value remaining after the taxable value of the life estates is

deducted from the taxable value of the trust) that is to be allocated to the specific bequests is 76.42%. That taxable value is $208,869.92, which results in a taxable value of $64,448.48 to be allocated to the residuary bequest to the City of Independence. The taxable value of each individual bequest is to be the same percentage of $273,318.40 as the amount of the bequest bears to the total taxable value of the trust. For example, there is a specific bequest to the Ruby E. Simmons Trust in the amount of $100,000. That is 18.153% of the taxable value of the trust, and 18.153% of $273,318.40 is $49,615.50, the taxable value of the bequest to the Simmons Trust for inheritance tax purposes.

The inheritance tax was erroneously calculated in this case. The judgment is reversed and the cause remanded with directions that the case be remanded to the probate court for calculation of the inheritance tax according to the views here expressed.

The foregoing opinion by ALDEN A. STOCKARD, C., is adopted as the opinion of the Court.

All of the judges concur.