**In the Matter of the ESTATE OF Margaret SHAPLEIGH, deceased, Appellant.**

No. 65570.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1984.

John Ashcroft, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for appellant.

Edwin S. Baldwin, Thomas E. Wack, Steven R. Rudolph, St. Louis, for respondent.

DONNELLY, Judge.

This is an appeal by the Director of Revenue from an order of the Probate Division of the Circuit Court of the City of St. Louis sustaining exceptions to the report of the inheritance tax appraiser by the personal representatives of the estate of the deceased. Because this appeal requires the construction of certain revenue laws, this Court has jurisdiction pursuant to Mo. Const. art. V, § 3.

The facts below were not in dispute. Decedent was granted a general testamentary power of appointment over the corpus of a trust under the terms of the will of her mother, Anna M. Shapleigh, and a general testamentary power of appointment under the terms of an indenture of trust entered into by her mother concurrent with the execution of her will in 1935. Anna M. Shapleigh died in 1936.

In 1942, Margaret Shapleigh executed a partial release of both powers of appointment to make impossible their exercise in favor of herself, her estate, or her creditors. In 1947, she executed releases of the powers of appointment created by the indenture of trust and by her mother's will. The releases were separate written documents, under seal and for consideration, releasing the powers and covenanting with the co-trustee who held the property and with the individual takers in default that she would not thereafter attempt to exercise the power given under the will or the indenture of trust. The releases were each acknowledged in the manner of a deed, and filed and recorded in the office of the Recorder of Deeds, City of St. Louis. Margaret Shapleigh died testate on September 24, 1979, almost thirty-two years after the releases were executed.

On May 24, 1982, the inheritance tax appraiser appointed by the circuit court filed his report. That report included the two trusts created by decedent's mother in the assets of decedent's estate subject to Missouri inheritance tax. The relevant items of the report read as follows:

12. The decedent had a taxable general power of appointment over a trust estab-

lished in her mother's, Anna M. Shapleigh's Will, which the decedent could exercise in her favor and having a value at time of death of $299,298.92

13. The decedent had a taxable general power of appointment over a Trust Under Indenture created by Anna M. Shapleigh, dated 6/26/35, having a value at time of death of $62,260.00

The circuit court sustained the exceptions to the report filed by decedent's personal representatives, finding that Margaret Shapleigh had effectually relinquished her powers of appointment by the releases executed in 1947. Accordingly, the court held there was no taxable transfer within the meaning of § 145.020, RSMo 1978, on her death.

The Director of Revenue appeals this determination of the Circuit Court. According to the Director, the applicable portions of the since-repealed Missouri Inheritance Tax Law, §§ 145.030, RSMo 1978, dealing with powers of appointment; 145.020, RSMo 1978, listing property subject to inheritance tax along with exemptions; and 145.010.4, RSMo 1978, defining "transfer," require the inclusion of the assets of the two trusts over which she had powers of appointment in decedent's estate. The Director reasons since the release had the same effect as an appointment of the takers in default, the release should be interpreted as an exercise of such powers for tax purposes. In addition, either the exercise or the failure to exercise an existing power of appointment is a taxable transfer under § 145.030, RSMo 1978. Estate of *DeWitt v. State*, 603 S.W.2d 931, 935–36 (Mo. banc 1980); In re *Tompkins' Estate*, 341 S.W.2d 866 (Mo.1960). Accordingly, it is argued that under § 145.030, the release should constitute a taxable transfer.

■ The Director's reasoning is not persuasive. The weight of authority supports the view that releases may effectually extinguish powers of appointment. *See* District of *Columbia v. Lloyd*, 160 F.2d 581 (D.C.Cir.1947); Restatement of Property § 334 (1940); 3 R. Powell, The Law of Real Property § 393 (1981); L. Simes & A.

Smith, Future Interests § 1054 (1936); Eisenstein, Powers of Appointment and Estate Taxes, 52 Yale L.J. 296 and 494 (1943); Nossaman, Release of Powers of Appointment, 56 Harv.L.Rev. 757 (1943); Comment, Release of Powers of Appointment in California, 46 Calif.L.Rev. 107 (1958). No particular form of release is required, *see, e.g.* 3 Powell, § 393 at 378.17; Nossaman, 56 Harv.L.Rev. at 766, although the Restatement approves the following methods:

(1) When the donee of a releasable power delivers, to some person who could be adversely affected by an appointment, an instrument, for consideration or under seal, declaring that he releases the power, the power is thereby released.

(2) When the donee of a releasable power joins with some or all of the takers in default of appointment in making an otherwise effective conveyance, this constitutes a release of the power so far as its exercise would defeat any interest created by the conveyance.

(3) When the donee of a releasable power contracts, with some person who could be adversely affected by an appointment, not to execute the power, the power is thereby released.

(4) All of the types of release enumerated in Subsections (1) to (3) may be total or partial.

*Caveat*: The Institute takes no position as to whether a release may be effected by methods not stated in this Section.

Restatement of Property § 336 (1940); *see also* Nossaman, 56 Harv.L.Rev. at 770 n. 70.

■ In this case, the releases executed by Margaret Shapleigh in 1947, together with her partial release in 1942 limiting the class of potential appointees, evidence her intention to relinquish the subject property. They resulted in bringing the alternative dispositive scheme of *her mother*, the donor of the powers of appointment, into place, and in eliminating uncertainty as to the ultimate takers of the property. In form, the releases followed the Restate-

ment methods. The powers of appointment were thereby extinguished; decedent could neither exercise nor fail to exercise them. Consequently, the released powers of appointment provide no basis for a taxable transfer within the meaning of § 145.020, RSMo 1978, upon the death of Margaret Shapleigh.

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

I agree with the holding in the principal opinion that the holder of a testamentary power should be able to release and destroy the power by unilateral act during lifetime. The holding might contravene the intention of the testator, who presumably intended that the donee retain the power until death, but it is in accord with the weight of authority, and promotes the free alienation of property.

It does not necessarily follow that, simply because the power may be released, the property subject to the power may be freed from a tax which would attach whether or not the power is exercised by will. By the state's analysis, however, the release of the power during lifetime is the equivalent of a gift to the takers in default, and Missouri had no gift tax during the time the late Inheritance Tax was in force. Nor does a release executed 32 years before the donee's death constitute a transfer in contemplation of death within the compass of former § 145.020.1(3), RSMo 1978. I agree that the tax is not owing under § 145.030, RSMo 1978.